Steven B. MUSLIN and Lynn G.
Muslin, Plaintiffs-Appellants,
Cross-Appellees,

v.

FRELINGHUYSEN LIVESTOCK MAN-
AGERS, INC., Monarch Insurance
Company of Ohio and Howard Klohr,
d/b/a Howard Klohr Agency, Defend-
ants-Appellees, Cross-Appellants.

Nos. 84–2993, 84–3066.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 17, 1985.

Decided Nov. 21, 1985.

Douglas K. Morrison, Marconi & Morrison, Chicago, Ill., for plaintiffs-appellants.

James P. DeNardo, McKenna, Storer, Rowe, White & Farrug, Chicago, Ill., for defendants-appellees.

Before ESCHBACH, EASTERBROOK and RIPPLE, Circuit Judges.

RIPPLE, Circuit Judge.

Plaintiffs Steven and Lynn Muslin (Muslin) brought this diversity action[1] against defendants Frelinghuysen Livestock Managers, Inc., Monarch Insurance Company of Ohio and Howard Klohr (collectively Frelinghuysen) to recover the proceeds of a $50,000 mortality insurance policy on the racehorse, Gymnast. Plaintiffs allege that ownership of both the horse and the insurance policy on the horse's life had been transferred to them by Selma and Edward Levy (Lynn Muslin's parents). Edward Levy was, at the time of the alleged transfer, an agent of the insurer, Frelinghuysen. The district court decided that Levy was without apparent authority to bind Frelinghuysen and that Muslin could not have relied to his detriment on any such representations of authority.

The plaintiffs' appeal is based on two distinct estoppel theories. First, Muslin asserts that, since the transfer of ownership of the horse did not increase the risk of loss, the company should be estopped from enforcing the forfeiture provisions of the policy. Additionally, Muslin claims that he relied to his detriment on Levy's apparent authority to effect transfer of the livestock mortality policy to him. Frelinghuysen cross-appeals the district court's denial of attorneys' fees and costs. For the reasons set forth below, we affirm the decision of the district court on the questions of estoppel, apparent authority and attorneys' fees, and we reverse on the question of costs.

## FACTS

This case involves the untimely demise of the racehorse, Gymnast. Originally, Gymnast was one of many horses owned by Edward Levy. Shortly after purchasing Gymnast at auction, Edward Levy gave the horse to his wife, Selma. Mr. Levy was also president of LAC Industries, Inc., an insurance brokerage, and an agent of Frelinghuysen. Levy's agency agreement with Frelinghuysen authorized him to receive proposals on new insurance and to issue temporary binders for horses bought at public auction. However, section III of the agency agreement stated that issuance of insurance was the sole province of the insurer and that the agent was prohibited from exercising rights or powers reserved

1. Where, as here, jurisdiction is based on diversity of citizenship, 28 U.S.C. § 1332, a federal court must look to the substantive law of the forum state, *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), including its choice of law rules. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Although at a late point in this litigation Muslin attempted to shift the focus to Illinois law (R. 94 at 8 n. 3), New York law governs this dispute. It is unclear from the record whether the parties stipulated to application of New York law or whether the district court decided that New York law should govern. In either case, the result is the same. Both parties initially acquiesced in the application of New York law. *See Casio, Inc. v. S.M. & R. Co.*, 755 F.2d 528, 530-31 (7th Cir.1985). In *Casio*, we stated that "[p]arties can within broad limits stipulate the substantive law to be applied to their dispute, and that is what we deem them to have done here by not objecting to the district judge's application of the substantive law of Illinois to their dispute." *Id.* at 531; *accord International Adm'rs v. Life Ins. Co.*, 753 F.2d 1373, 1376 (7th Cir.1985). Thus, Muslin is deemed to have waived any objection to application of New York law which may have been available.

to the company under the terms of the policies issued by the company. The agreement also prohibited the agent from holding himself out as authorized to act on behalf of the company except as provided by the agreement. Trial Ex. 23.

According to the district court, in February 1978, Mrs. Levy informed Lynn and Steven Muslin—her daughter and son-in-law—that she was giving them the horse. No formal transfer was effected; the transfer was oral. The only tangible evidence of the transfer, the certificate of registration issued by the United States Trotting Association, was dated April 24, 1978. Even the "Assignment of Insurable Interest," indicating that ownership had been transferred, was admittedly back-dated by the notary to February 14 although, in fact, it was not executed until after the horse's death on May 15. Appellants' Br. 6–7.

Selma Levy held a mortality insurance policy on Gymnast, which was paid-in-full through November 1978 and which had been written through Frelinghuysen. General Condition No. 12 of the policy provided that the coverage of the horse would be voided if the policy were assigned or transferred without the company's written consent. Specific Condition No. 2 provided that transfer of any interest in the animal would result in the voiding of the policy.

Despite these provisions, written consent to the assignment was never obtained from Frelinghuysen by Muslin or by Edward Levy. The district court found that Levy did not tell Muslin that he would take care of the assignment of the policy until early May (not February as Muslin claims). Trial Tr. 216. As the district judge noted, the only tangible evidence of action by Levy to notify Frelinghuysen of the change of ownership is the correspondence between Levy and defendant Klohr in mid-May. Trial Tr. 216. On May 7, 1978, Levy contacted Howard Klohr and asked him, as a favor, to notify Frelinghuysen of the change in ownership. Klohr, like Levy, was only an agent and was, therefore, not empowered to authorize the assignment of the policy in violation of its terms. When the horse died of natural causes on May 15, 1978, Frelinghuysen refused to pay on Muslin's claim, maintaining that the policy was voided upon transfer of ownership and that the attempted assignment of the policy failed for lack of written consent by the insurer.

Plaintiffs then commenced suit against Frelinghuysen in the district court. In April 1981, the district court granted summary judgment for Frelinghuysen based on the facts that Selma Levy—the policy holder—did not own the horse at the time of its death and Muslin—the purported owner—did not own the insurance policy at the time of the horse's death. On March 30, 1982, by unpublished order, we affirmed the grant of summary judgment with respect to Levy's actual authority and reversed and remanded to the district court to decide whether Levy had apparent authority to waive the insurance policy provision requiring written consent to an assignment and, if so, whether Muslin reasonably relied on this apparent authority to his detriment. *Muslin v. Frelinghuysen Livestock Managers, Inc.*, 679 F.2d 894 (7th Cir.1982), unpublished order at 4–5. If so, Frelinghuysen would be estopped from denying the validity of the policy.

On September 20, 1984, following a bench trial, the district judge announced a verdict for the defendants. However, he ordered Frelinghuysen to refund to Selma Levy $1200—the pro-rated amount of the premiums paid on the policy from the date that the policy became null and void. After trial, Muslin filed a motion for a new trial; Frelinghuysen asked for attorneys' fees and costs. Both motions were denied. It is from the September 1984 verdict and attendant denials of motions that these appeals were taken.

I

Muslin contends that Frelinghuysen should be estopped from enforcing the policy's forfeiture provisions because the transfer of ownership did not increase the risk of loss. This claim was not raised in the original or first amended complaint and

was not addressed in our order regarding the grant of summary judgment. Muslin claims that paragraph 11 of the second amended complaint[2] raises the forfeiture issue. That paragraph states: "Plaintiffs are informed and therefore believe that assignments of such insurance policies are routinely approved by Freylinghuysen [sic], absent extraordinary changes in circumstances surrounding the transfer of the horse and policy."

First of all, we are not persuaded that this paragraph is adequate to state an estoppel claim. Indeed, the district judge's decision does not even mention this claim. Even if we were to find that paragraph 11 was sufficient to state a claim, we could not grant relief. It has been well-settled in New York since the time of Cardozo that provisions requiring written consent to assignments of insurance are valid and enforceable. See *Truglio v. Zurich General Accident & Liability Ins. Co.*, 247 N.Y. 423, 160 N.E. 774 (1928). Judge Cardozo's statement in *Truglio* is applicable here:

> This is a case where the original party to the contract has dropped out altogether, transferring the whole title to others, who have no interest in the insurance unless a new contract has been made between them and the insurer. The policy of insurance in their hands was no longer "a live instrument," unless life was breathed into it again by force of a new assent responsive to a new offer.

160 N.E. at 774 (citation omitted). Selma Levy, by transferring ownership to Muslin, caused the policy to become null and void. The fact that care and maintenance of the horse remained unchanged is irrelevant in light of the policy's clear prohibition. In New York, "[w]here ... a liability policy requires the written consent of the insurer to effectuate the transfer of the insurable interest, the policy loses its force as a contract upon conveyance of the property without such consent." *Meridian Trading Corp. v. National Automobile and Casu-*

*alty Insurance Co.*, 45 Misc.2d 847, 258 N.Y.S.2d 16, 19 (1964) (citation omitted). Muslin has provided no relevant authority to the contrary. That the risk of loss was not increased by virtue of the change in ownership is irrelevant in light of the clear language of the insurance policy and the clear mandate of New York law.

II

Muslin's second estoppel theory is based on his allegation that Edward Levy was empowered to effect the assignment of the insurance policy. The issues, whether Edward Levy had apparent authority to waive the policy restrictions and whether Muslin reasonably relied on this apparent authority to his detriment, were fully litigated in the district court. The scope of our review of the district court's findings is narrow. As the Supreme Court recently stated:

> [W]hen a trial judge's finding is based on his decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error.

*Anderson v. City of Bessemer City*, 470 U.S. ——, ——, 105 S.Ct. 1504, 1513, 84 L.Ed.2d 518 (1985). The scope of an insurance agent's apparent authority is a question of fact to be decided according to the specific circumstances of the case. *Reese v. Schneider*, 26 Misc.2d 276, 201 N.Y.S.2d 857 (1960). In this case, the district judge—the trier of fact—found that there was no apparent authority to waive written consent and that Muslin did not reasonably rely on this authority to his detriment. The plaintiffs are attempting, in essence, to retry the case they lost in the district court. However, applying the foregoing standard, we find absolutely no reason to overturn that judgment.

---

**2.** The second amended complaint was filed upon remand to the district court following our

March 30, 1982 order.

Apparent authority arises when "written or spoken words or any other conduct of the principal which, reasonably interpreted, causes the third person to believe that the principal consents to have the act done on his behalf by the person purporting to act for him." RESTATEMENT (SECOND) OF AGENCY § 27 (1957). The effect of apparent authority is virtually the same as that of actual authority. In New York, a contract provision requiring written consent for any alteration of the policy may be waived by an agent of the company acting within the scope of his real or apparent authority.[3] *Biloz v. Tioga County Patrons' Fire Relief Ass'n,* 21 N.Y.S.2d 643, *affirmed,* 260 A.D. 976, 23 N.Y.S.2d 460 (1940); *Bishop v. Agricultural Insurance Co.,* 130 N.Y. 488, 29 N.E. 844 (1892). The district court's finding that Mr. Levy did not have apparent authority to waive the policy terms was supported by ample evidence. The evidence presented in this case was largely testimonial in nature—Muslin testified on his own behalf, and Howard Klohr and Frelinghuysen president, A.D. Vita, testified for Frelinghuysen. Thus, the district judge had ample opportunity to assess the credibility of the witnesses—and to decide which party he believed.

It is undisputed that Mr. Levy was an agent of Frelinghuysen in February 1978 when the transfer of ownership was alleged to have occurred. However, the record also makes clear that the agency agreement prohibited Mr. Levy's usurpation of the terms of the policy. In support of his claim that Mr. Levy was apparently authorized, Muslin testified that, on various occasions, he had heard his father-in-law orally issue binders; that he knew Mr. Levy was an agent of Frelinghuysen; that the horse was covered by a paid-in-full mortality policy which Mr. Levy promised to have assigned to Muslin and that he did not

have a copy of the policy. The question at trial, however, was not whether Mr. Levy believed he was authorized to act but whether Frelinghuysen's conduct made it appear to Muslin that Levy was so authorized. *See* 3 Am.Jur.2d Agency, § 75 (1964). The district court's finding that Frelinghuysen did not vest Levy with the appearance of authority and indeed had specifically limited that authority in Levy's agency agreement (Trial Tr. 216–18) is supported by the weight of the evidence.

Moreover, even if the district court had found that Frelinghuysen had vested Levy with the appearance of authority, Muslin had to persuade the court that he had reasonably relied on such a representation of authority. Upon a showing by Muslin, "that he has been prejudiced by the insurer's actions and that he has relied on some conduct by the insurer to his detriment," Frelinghuysen would be estopped from asserting any defenses to Muslin's claim. *Mattimore v. Patroon Fuels, Inc.,* 103 A.D.2d 981, 479 N.Y.S.2d 839, 841 (1984); 16B J. APPLEMAN, INSURANCE LAW AND PRACTICE § 9081 (1981). Muslin made no such showing. Indeed, the record reflects that there was ample evidence that Muslin was fully aware of Levy's lack of authority. Specifically, the district judge found that Muslin served as Levy's counsel in a lawsuit instituted by Frelinghuysen against Levy for fraud owing to his failure to remit insurance policy premiums to Frelinghuysen. Trial Tr. 216–17. Levy pled guilty to a corresponding criminal charge of fraud, and in March and April 1978, many of his assets—including his horses—were attached and sold by Frelinghuysen to satisfy the deficiency. The district court found it "difficult, if not impossible, to imagine that any representation by Mr. Levy to Mr. Muslin occurring in April or

---

**3.** That Levy did not possess actual authority is undisputed. Section III of the agency agreement makes clear that Levy had no authority to assign the policy or to authorize the assignment. Moreover, any authority to act on behalf of Frelinghuysen possessed by Levy was terminated on March 21, 1978 when Frelinghuysen notified LAC Industries—whose president was

Levy—by Mail-Gram that no further business would be accepted from LAC unless all past due premiums were paid. (Trial Ex. 22). Indeed, in our 1982 order, we upheld the grant of summary judgment with respect to the actual authority question. *Muslin,* 679 F.2d 894, unpublished order at 3.

May of 1978 and involving a change of the insurance policy with Frelinghuysen could have been relied upon by Muslin given his knowledge of his father-in-law's problems with Frelinghuysen." Trial Tr. 217. Further, at the time of the suit against his father-in-law, Muslin had not received any indication from Frelinghuysen that the policy had been transferred. In light of Muslin's knowledge of Levy's difficulties with Frelinghuysen and his possession and use of the agency agreement in furtherance of his father-in-law's case, the district court had more than enough evidence before it to find that Muslin could not have believed that Levy was authorized to act on behalf of Frelinghuysen. The party who claims to rely on an agent's apparent authority must not have closed his eyes to warnings or inconsistent circumstances. *Van Arsdale v. Metropolitan Title Guaranty*, 103 Misc.2d 104, 425 N.Y.S.2d 482, 484–85 (1980).

Muslin's representation of Levy in the Frelinghuysen suit was but one of many factors supporting the district court's finding of non-reliance by Muslin. Other factors include that, on March 21, 1978, Frelinghuysen advised Levy that he was no longer authorized to represent it (Trial Tr. 217); the transfer of ownership of Gymnast was not recorded until April 24, not in February when the transfer is alleged to have occurred (Trial Tr. 216); in May, Levy spoke to defendant Klohr regarding advising the company of the assignment (Trial Tr. 216); the assignment of the policy was executed late in the spring and backdated (Trial Tr. 218); and that Levy had returned his broker's license to the State of New York (Appellees' Br. 25, Appellants' Br. 12).

In light of this overwhelming evidence—largely testimonial in nature—it is impossible to say that the district judge's conclusion that Levy was not vested by Frelinghuysen with apparent authority and that Muslin did not reasonably rely on any such authority to his detriment is clearly erroneous. Indeed, his conclusion finds overwhelming support in the record. There-

fore, we affirm the decision of the district court on the estoppel issues.

## III

■ Lastly, we turn to the question whether the district court properly denied Frelinghuysen's post-trial motion for attorneys' fees and costs pursuant to FED.R. CIV.P. 11 and 54(d).

According to the so-called American Rule, "the prevailing litigant ordinarily is not entitled to collect a reasonable attorneys' fee from the loser." *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 247, 95 S.Ct. 1612, 1616, 44 L.Ed.2d 141 (1975). However, this rule is not without exceptions. Thus, attorneys' fees may be assessed by a court when the losing party "has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *F.D. Rich Co. v. United States ex rel. Industrial Lumber Co.*, 417 U.S. 116, 129, 94 S.Ct. 2157, 2165, 40 L.Ed.2d 703 (1974). Absent statutory authorization, a demand for attorneys' fees is only granted in unusual circumstances. *Coyne-Delany v. Capital Development Board*, 717 F.2d 385, 390 (7th Cir.1983). Our scope of review of a denial of attorneys' fees is limited. The "denial of attorneys' fees in general is a matter for the sound discretion of the trial judge." *Indianapolis Colts v. Mayor and City Council of Baltimore*, 775 F.2d 177, 181 (7th Cir.1985) (quoting *Gieringer v. Silverman*, 731 F.2d 1272 (7th Cir.1984)). We decline to reverse the district court's exercise of its discretion in denying attorneys' fees.

■ The question of costs is a different matter. FED.R.CIV.P. 54(d) states that, "[e]xcept when express provision therefor is made either in a statute of the United States or in these rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs." This rule creates a presumption that the prevailing party is entitled to costs. *Delta Air Lines, Inc. v. August*, 450 U.S. 346, 351, 101 S.Ct. 1146, 1149, 67 L.Ed.2d 287 (1981); *Baez v. United States Department of Justice*, 684 F.2d 999, 1004–05 (D.C.Cir.1982);

**1236**

*Gardner v. Southern Railway Systems,* 675 F.2d 949, 954 (7th Cir.1982). More than just a showing of good faith is necessary to immunize the losing party from paying costs. *Gardner,* 675 F.2d at 954; *Popeil Brothers, Inc. v. Schick Electric, Inc.,* 516 F.2d 772, 776 (7th Cir.1975).

 Furthermore, assessment of costs should be denied only if the unsuccessful party shows that the prevailing party should be penalized by the denial of costs. *Popeil,* 516 F.2d at 776. Certainly, no such showing was made in this case. Therefore, we reverse the district court's denial of costs and remand for a determination of the appropriate costs to be assessed against Muslin.

## CONCLUSION

After two thorough hearings on this matter in the district court and two careful considerations before this court on appeal, this matter has been fully and completely litigated. As the Supreme Court has recognized, albeit in a different context, "[p]ublic policy dictates that there be an end of litigation; that those who have contested an issue shall be bound by the result of the contest...." *Baldwin v. Iowa State Traveling Men's Association,* 283 U.S. 522, 525, 51 S.Ct. 517, 518, 75 L.Ed. 1244 (1931). In this litigation, that time has come.

Accordingly, the judgment of the district court denying costs to the defendants is reversed. In all other respects, the judgment is affirmed.

AFFIRMED IN PART AND REVERSED IN PART.