Jack Stanislaw, J.
This action was brought to enjoin defendants Tomgil Building Corp. and the Planning Board of the Town of Huntington from violating or interfering with an easement as claimed to exist by deed by plaintiffs Sullivan and Velsor (hereinafter referred to collectively as “Sullivan”). In addition, a judicial declaration and definition of the easement is sought, as well as monetary damages. The Planning Board was and is a passive party to the action. Tomgil denied the allegations of the complaint, affirmatively pleaded an abandonment of the easement, and counterclaimed for its own purported monetary damages. It also instituted a third-party action against Inter-County Title Guaranty & Mortgage Company, for its possible damages as well as additional damages by way of loss of value in the property in the event the primary complaint be sustained.
The title company denied the allegations of the complaint directed against it, and affirmatively added three defenses. These are: (1) that its certificate of title disclosed the easement, (2) that Tomgil knew of the easement itself yet failed to disclose its existence to the company, and (3) that the property had been purchased subject to the easement and thus the policy of title insurance did not cover it.
A temporary injunction was granted by Mr. Justice Taskeb on September 9, 1964, restraining approval by the Planning Board of Tomgil’s proposed subdivision which did not show the existence of the easement. This then was the status of the action as it came on for trial before this court without a jury.
Plaintiffs’ title traces back to a 1901 deed containing an easement to use a strip of land at the water’s edge for purposes of bathing and erecting bathing houses. Tomgil’s theory of abandonment is primarily based upon the absence of bathing houses upon the land subject to the easement, from the time of the grant to the present. Sullivan claims the burdened property measures 100 feet in length by 50 feet in depth.
It is apparent, from both the exhibits received in evidence as well as the expert testimony offered, that the easement itself came into being in writing in 1901, that it affects the property now owned by the defendant Tomgil, that it inures to Sullivan’s benefit, and that it extends 50 by 100 feet from a prior right of way now East Neck Road. Plaintiffs have sustained the proof *615 of these matters, and it has not been successfully rebutted by Tomgil. Proceeding then, and even assuming the validity of Tomgil’s affirmative defense of a physical abandonment, that negative fact alone is not capable of destroying the easement created by a valid and proper written instrument. (Strevell v. Mink, 6 A D 2d 350, affd. 6 N Y 2d 850.) If simple nonuser cannot extinguish a written grant, then Tomgil’s defense must be held ineffective as a matter of law (see, also, Gerbig v. Zumpano, 7 N Y 2d 327).
As to the third-party action, the issues raised are a bit more subtle. The purchaser of the property subject to the easement knew of its existence, but apparently disregarded it as a practical consideration. Fee title insurance was ordered subsequent to the execution of the contract of sale, and the letter requesting the policy did not reveal Tomgil’s knowledge of the easement. A report of title issued by the company noted the casement only as being set forth in a mortgage covering the property. About one week before closing title Tomgil received a letter from Sullivan pointing out the existence of the claimed easement. The substance of the letter was referred, at least in part, to a representative of Inter-County. At any rate, title closed, with Tomgil’s attorney acting as closer for the title company. The closing report he forwarded to the company contained an exception with respect to the restriction at issue here. This exception was carried forward into the policy of title insurance later issued to Tomgil.
At first, the purchaser’s duty to the title company, if any, must be dealt with. The record leaves little doubt but that Tomgil and its attorney had some knowledge of the existence of the claimed easement even prior to the signing of contract. The testimony is clear on this point, and the provision of the contract whereby Tomgil was to take subject to the easement confirms an awareness of it then. Under these circumstances, when the title company noted the easement to this defendant in its report (albeit incidentally) it had independently discovered that which Tomgil had not thought important enough to point out in the first place. Granted the company did not indicate the easement in bold face or red letters, the fact remains that the information was made available. The effect of an easement, valid or not, was a factor to be resolved as between vendor and purchaser depending upon the terms of their contract. It was not for Inter-County, as Tomgil quietly intimates, to negotiate, renegotiate, or bear the brunt of any disabilities of Tomgil’s contract.
*616 It should be pointed out that the third-party action is resolved basically upon Tomgil’s knowledge and awareness of the easement question. This scienter coupled with the title policy exception as to easements is sufficient. We do not reach the issues relating to the effect of the terms of the contract of sale or the nature or propriety of the title company’s report with respect to the easement itself.
The counterclaim in the main action was dismissed during trial. The plaintiffs shall have judgment enjoining any interference with their easement by either or both defendants, as prayed. The easement itself is determined to be a strip of land 50 by 100 feet, adjoining the conceded right of way, and as otherwise set forth in the 1901 and 1905 grants of same by plaintiffs’ predecessor in title. The third-party complaint is dismissed.