OPINION OF THE COURT
John D. Capilli, J.
This is an action in which the plaintiff is suing for money damages, resulting as a diminution in the value of land purchased by the said plaintiff.
It involves real property located in East Quogue, Town of Southampton, Suffolk County, New York, known and designated as Lot No. 118 on a certain map entitled, "Map of Pine Neck Landing, Section 2”.
The diminution in the value of Lot No. 118 is occasioned by the existence of a certain perpetual easement contained in an instrument recorded in Liber 5717, at page 80, at the clerk’s office of the County of Suffolk.
This matter was tried before this court without a jury.
facts
The plaintiff, Alanson Van Arsdale, and his wife, Barbara, purchased, on October 26, 1972, Lot No. 118, and through their attorney (now deceased) ordered a title search and title policy from the defendant, Metropolitan Title Guaranty Company.
At the closing the title policy of insurance issued by the defendant to the plaintiff stated that the premises were "subject to the burdens of a certain easement contained in an instrument recorded in Liber 5717 at Page 80” (emphasis supplied) and were not excepted or omitted by the defendant or its agent.
Subsequent to the closing of title the plaintiff visited the newly purchased property, Lot No. 118, and observed that *106 there was well digging and trenching going through Lot No. 118, without any authorization from the plaintiff.
No direction to leave the property was given.
Instead, the plaintiff went to his attorney, Joseph J. Regan, Jr., and revealed the intrusion that was taking place upon the purchased property.
It was testified that the plaintiff’s attorney contacted the closer and a letter was issued upon defendant’s stationery, correcting the title policy, and signed by "J. Paige”, the closer.
This correction allegedly omitted the exception burdening the easement, which is the basis of the lawsuit herein.
The defendant, through its vice-president, Jane De Prietas, alleges that the policy insuring title was not amended by a "specific endorsement” nor executed with the same formality as a policy of insurance by one of three authorized persons to create an enforceable policy.
ISSUE
Was the policy of title insurance properly amended pursuant to section 12, validation and modification, under said policy?
CONCLUSIONS OF LAW
The court, after listening to the testimony from the respective parties, finds that the plaintiff did not comply with section 12. Therefore, the policy was never validly modified to delete the easement as an exception from coverage.
It is to be noted section 12, validation and modification, discloses the following language: "This policy is valid only when duly signed by a validating officer or agent. Changes may be effected only by written endorsement(Emphasis supplied.)
The dispute herein has been occasioned because a person not authorized to amend or modify existing policies wrote the word "omit” adjacent to the place upon the policy where said easement was set forth as an exception and placed his initials beneath the word so inscribed. Said initials, it appears, are those of Joseph Paige, the "title closer” — agent of defendant. Since the acts of the agent were outside the scope of his authority (and the alleged amendment was not in conformity with section 12 of the policy), as a matter of law, defendant *107 principal is not bound thereby (Harriss v Tams, 258 NY 229, 235; 2 NY Jur, Agency, § 242) unless such ultra vires acts have been ratified or apparently authorized by the defendant principal. (2 NY Jur, Agency, §§ 87, 157.)
A principal will not be bound where, as here, the agent exceeds the scope of his authority and the person with whom he is dealing knew or should have known the limitations upon the agent’s authority. (2 NY Jur, Agency, §§ 78, 79.) As the policy itself set forth the scope of the agent’s authority, by stating the authorized manner by which amendments thereto were to be made, plaintiff, being on notice thereof, knew or should have known of the limits upon the agent’s authority and, by disregarding the clear terms of his policy, acted at his peril.
In addition, a claim of liability for the agent’s acts under the notion of "apparent authority” cannot be maintained since a principal will be bound by the unauthorized acts of his agent only when the apparent authority invested by the principal in his agent has misled an innocent third party. (Matter of Dugan, 147 Misc 776, 781.) Where reliance on such apparent authority is inconsistent with the circumstances of the transaction (2 NY Jur, Agency, § 89) or the terms of a contract (Ernst Iron Works v Duralith Corp., 270 NY 165, 170), such reliance is ineffective to bind the principal. One who deals with an agent knowing that he is clothed with circumscribed authority (Quinlan v Providence Washington Ins. Co., 133 NY 356) or one who is under a duty to inquire as to the extent of the agent’s authority (2 NY Jur, Agency, §§ 77, 78) cannot hold the principal. Since the plaintiff, dealing with the agent, knew or should have known that the power to amend the policy was limited and delegated to certain employees of the defendant, the defendant principal ought not to be bound by the unauthorized transaction between its agent and the plaintiff. Accordingly, the claim is hereby dismissed.
The court was further presented an additional basis for dismissal in regard to section 9, misrepresentation: "Any untrue statement made by the insured with respect to any material fact, or suppression of or failure to disclose any material fact, or any untrue answer by the insured to material inquiries before the issuance of this policy, shall void this policy.”
It is undisputed that plaintiff never disclosed that he had knowledge that "well digging” and "trenching” had been *108 taking place on his property pursuant to the "perpetual easement”, prior to the purported amendment.
Predictably, the defendant contends that such nondisclosure is directly violative of section 9 and would have barred recovery had the policy been validly amended.
The court cannot concur with this reasoning. It is the interpretation of the court that the "misrepresentation clause” in the instant case has no application since that clause relates to the original insurance application and not to an amendment as purported herein, where the perpetual easement is known to the defendant and it has been further omitted from the original issuance of the title policy. This holding is consistent with Smirlock Realty Corp. v Title Guar. Co. (421 NYS2d 232).
 A title policy, by its terms, defines and limits the liability of the company (Offenhartz v Heinsohn, 30 Misc 2d 693). The clear and unequivocal terms of this policy set forth both the conditions under which amendments thereto may be effectuated and the circumstances under which recovery is precluded for nondisclosure of material information. This court must, accordingly, give effect to the terms of the policy by which recovery is barred. Title insurance is unique in that it is retrospective, not prospective. It is designed to protect against past events, not possible future encumbrances. (Trenton Potteries v Title Guar. & Trust Co., 176 NY 65, 72.) By soliciting an unauthorized amendment to his policy plaintiff has endeavored to extend the coverage of the policy beyond its limits. To this attempt, the court cannot give effect.
Lastly, the court will not go into the question of damages, it having become "moot” by the dismissing of the plaintiff’s claim.