OPINION OF THE COURT
Fred A. Dickinson, J.
Plaintiff’s motion for summary judgment on its complaint *916 for foreclosure of a mortgage, to strike the affirmative defenses and counterclaims of the mortgagor/guarantor defendants, to strike the answer and to sever the counterclaims of McNamee Construction Corporation, to amend the caption, and to appoint a Referee to compute, having come before this court on the Motion Calendar of July 23, 1991, and all parties having had an opportunity to be heard, the court now renders its decision.
FACTS
Defendant Virginia Woods, Ltd. is a corporation organized to hold title to, and to sell condominium units on, certain real property in the Town of Southeast. The property was bought in 1980 by Richard Adler from Ira Helman, by bargain and sale with covenant against grantor’s acts — essentially a quitclaim deed. (Axelrod, Berger & Johnstone, Land Transfer and Finance, at 505 [2d ed 1978].) Adler had previously refused to purchase the property in 1979 because of the restriction on the property’s use described below. However, he believed the restriction to have been removed in 1980 because a title insurance policy issued to him at the time marked the restriction omitted. That transaction has given rise to a companion suit (see, Adler v Helman, 169 AD2d 925 [3d Dept 1991]). The title insurer in that case is not the same as in the case at bar.
Thereafter, Adler transferred the property, by bargain and sale deed, for no consideration, to Virginia Adler, who transferred the property to Virginia Woods, Ltd., also by bargain and sale for no consideration.
The restriction in question may be found in Liber 117, op. 118 of the Putnam County Land Records. It is contained in a deed from the City of New York to Edith Diehl, covering approximately 2 out of the 9.3 acres bought from Helman. (See, Adler v Helman, supra.) The deed is made upon "express condition”:
"1. That no structure of any kind shall be erected on the above parcel.
"2. That no house waste, filth, refuse or other matter objectionable to the City of New York shall be thrown or discharged upon the surface of the above parcel, nor shall the said parcel or any part thereof be used for any purpose or purposes inconsistent with the sanitary protection of the water supply of the City of New York.”
*917 Upon violation of the conditions, the estate was to cease and terminate.
In 1987, after receiving approvals to build 20 condominium units from the local land use bodies charged with regulation over the planning and zoning of the parcel, Virginia Woods applied for and received a building construction loan from the plaintiff in the amount of $1.3 million. By order dated July 1, 1991, this court requested a copy of the loan application and all supporting documentation. Apparently the only documents submitted to the plaintiff bank consisted of an appraisal and a profile of the project and its principals.
A mortgage note, unconditional guarantees by the Adlers and Jessica Mandy, and a building loan agreement were thereupon executed. The guarantors’ fortunes rise or fall on the fortunes of Virginia Woods. Virginia Woods, Ltd., the Adlers, and Mandy are collectively referred to as the "mortgagor/guarantor defendants”.
A title binder, insuring the building loan agreement and mortgage was issued to plaintiff, for which Virginia Woods, Ltd., as is customary in such transactions, paid the premium. No fee insurance was purchased for the owner.
While no policy was apparently issued, the title commitment effectively insured the mortgagee. (See, 68 NY Jur 2d, Insurance, § 648 [1988].)
The commitment expressly excepted: (a) defects and incumbrances arising or becoming a lien after the date of this policy, except as hereinafter provided, (b) covenants and restrictions in Liber 117, op. 118.
As to this latter exception, the commitment contained this additional affirmative language: "Policy insures that same have not been violated by the existing improvement. There is no condition or right of entry or other provision for forfeiture under which the insured can be cut-off, subordinated or otherwise disturbed.”
At the time of the issuance of the policy, the parcel was unimproved.
Thereafter, construction of the condominiums commenced. In April of 1988, the City of New York informed Virginia Woods that the restriction was effective. In August of 1988, the City sued Virginia Woods for injunctive relief. No other party was joined in that suit, which resulted in a stipulated judgment on or about February 22, 1989. As part of that *918 judgment, Virginia Woods agreed to build only eight condominium units, serviced by two six-ring septic systems.
The principal sum advanced under the building loan agreement as of the date of loan maturity on December 16, 1989 was $1,234,585.36 plus interest. Virginia Woods paid the interest due on the note through January 31, 1990.
This action to foreclose the mortgage was commenced in June of 1990.
THE AFFIRMATIVE DEFENSES
The parties have stipulated that the first and second affirmative defenses of Virginia Woods, the Adlers, and Mandy may be dismissed. The court so orders.
As to the third, sixth and eighth affirmative defenses, the motion to dismiss them is unopposed. They are accordingly dismissed.
The remaining fourth, fifth and seventh affirmative defenses essentially assert that the mortgagor/guarantor defendants need not repay the loan because the plaintiff, knowing they would rely on the policy of title insurance issued, and knowing the purpose to which the loan proceeds would be put, owed to them a duty to use care in the review of the title report and owed them a duty to mitigate damages by making a claim on the title policy.
The first and second counterclaims essentially restate these contentions, but claim the breach of these duties resulted in damages, for which the mortgagor/guarantor defendants are owed an amount over and above the loan proceeds.
LAW
1. The Nature of a Mortgage.
In New York, a mortgage is a lien on real property, given as security for the payment of debt; "a note secured by a mortgage represents the primary personal obligation of the mortgagor, and the mortgage is the security for such obligation.” (77 NY Jur 2d, Mortgages, § 2, at 374-375 [1989].) The holder of a mortgage may elect either to sue on the debt, represented by the note, or else to enforce his lien on the property (78 NY Jur 2d, Mortgages, § 417, at 269-270 [1989]), and thereafter to seek the statutory remedy of a deficiency (79 NY Jur 2d, Mortgages, § 746, at 108-109 [1989]). In seeking a deficiency, the remedy is primarily equitable in nature, with the money judgment being ancillary and incidental (Jamaica Sav. Bank v *919 M.S. Investing Co., 274 NY 215 [1937]), and no right to trial by jury is afforded, even as to the guarantors on the note. (Supra.)
2. The Nature of Title Insurance.
"A title policy, by its terms, defines and limits the liability of the company. * * * Title insurance is unique in that it is retrospective, not prospective. It is designed to protect against past events, not possible future encumbrances.” (Van Arsdale v Metropolitan Tit. Guar. Co., 103 Misc 2d 104, 108 [Dist Ct, Nassau County 1980].)
Insurance Law § 1113 (18) provides: " 'Title insurance,’ means insuring owners of, and other persons lawfully interested in, real property and chattels real against loss by reason of defective titles and encumbrances and insuring the correctness of searches for all instruments, liens or charges affecting the title to such property, including power to procure and furnish information relative thereto, and such other incidental powers as are specifically granted in this chapter.” .
Mortgage title insurance protects a lender from defects in title which may affect the validity of its lien. (See generally, 3A Warren’s Weed, New York Real Property, Mortgages § 12.03 [5] [4th ed 1990].)
Where a defect in title occurs after the issuance of a policy the failure to except same from the title policy is proper, and does not give rise to a cause of action on behalf of third parties who were aware of the possibility that such a lien might arise in the future. (Luboff v Security Tit. & Guar. Co., 46 Misc 2d 599 [Sup Ct, Westchester County 1965]; Cummins v U. S. Life Tit. Ins. Co., 40 NY2d 639 [1976]; cf., Sullivan v Tomgil Bldg. Corp., 46 Misc 2d 613 [Sup Ct, Suffolk County 1965] [no claim against company where insured was aware of defect and it was excepted from the policy].) The fact that marketable title is insured as of a particular day does not result in a claim on the contract of insurance caused by a subsequent or even contemporaneous violation of a building restriction by the owner. (Bronen v New York Abstract Co., 19 AD2d 821 [1st Dept 1963] [zoning violation].)
A condition precedent of coverage under a policy of title insurance is that there must be a final determination in a court of competent jurisdiction adverse to the insured’s title on a lien or encumbrance not excepted in the policy. (Bronen v New York Abstract Co., supra; Kenrich Props. v City Tit. Ins. Co., 25 AD2d 520 [1st Dept 1966].)
*920 3. The Instant Claims.
It is clear from the foregoing principles of law that the title insurance contract in question was issued for the benefit of the mortgagee, and not for the benefit of the mortgagor/ guarantor defendants. (Cf., Myers v L & M Developers, 172 AD2d 1043 [4th Dept 1991] [certificate of occupancy requested by lender was for its benefit and not that of borrower].) Moreover, the affirmative language stating that the condition was not violated was true at the time of the commitment, as the parcel was unimproved. (Bronen v New York Abstract Co., supra.) The fact that Adler believed the condition had been removed is of no legal significance. Adler relied solely on the fee policy of insurance he obtained seven years prior to the closing, and apparently never required proof the condition had been released, nor caused the land records to be searched to verify the same. The condition could only be released by voluntary act of the City of New York. (RPAPL 1955 [5].)
The further language in the commitment stating that there was "no condition or right of entry or other provision for forfeiture under which the insured [could] be cut-off, subordinated or disturbed” also ran to the plaintiff and not to the defendants. The policy protected the lien of the mortgage, and not the fee interest of the owner, and represented the insurer’s determination that the chance of forfeiture of title and consequent impairment of security represented an acceptable risk. (3A Warren’s Weed, New York Real Property, op. cit., at 269; cf., Trustees of First Cong. Church v American Home Missionary Socy., 59 Misc 2d 717, 721 [Sup Ct, Suffolk County 1969] [suggesting that an interest in a possibility of reverter was not susceptible of money damages].) It must also be emphasized that Adler’s prior purchase of the property was not financed by plaintiff, nor was Adler’s fee policy issued by the insurer of plaintiff’s title. (Cf., Holly Hotel Co. v Title Guar. & Trust Co., 147 Misc 861 [Sup Ct, NY County 1932], affd without opn 239 App Div 773 [1st Dept 1933] [fee owner stated claim against title insurer who refused to subsequently insure later mortgage].)
The mortgagor/guarantor defendants were requested to cite any cases in which a lender was held obligated to make a claim against its title policy to mitigate damages for the benefit of its borrower. None have been cited, and the court’s own research has revealed none. This is a question of first impression, at least in this State.
*921 While New York recognizes a cause of action for negligence arising out of a contract, it does so only where an independent duty exists, collateral to the contract obligation. (Quail Ridge Assocs. v Chemical Bank, 162 AD2d 917 [3d Dept 1990].) Although the mortgagor/guarantor defendants assert the plaintiffs negligence in the reading of the title report and a concommitant fiduciary duty to mitigate damages by making a claim on its insurance contract, obligations collateral to the parties’ building loan agreement, the court is convinced that no such fiduciary duty exists. Mortgage title insurance simply does not insure the collectability of a loan nor the economic viability of a project. Rather, it insures the enforceability of the mortgage. (Cf., Kenrich Props, v City Tit. Ins. Co., supra [no claim on title policy for loss of building because structural infirmity of structure caused it to bulge out into street, creating an encroachment; loss of improvement did not result from defect in title as of date of policy].)
While the defendants argue that such a fiduciary duty existed because the plaintiff was aware that the borrower intended to build condominium units, and that it therefore knew that a defect in title was potentially disastrous, plaintiff notes that the restriction encompassed less than 25% of the parcel in question. There is no proof before the court that, even if the alleged duties on the lender’s part existed, the plaintiff was aware of the proposed units’ location.
The further contention that the lender had an obligation to notify its insurer of a possible claim may also easily be dispensed with, ignoring as it does certain crucial facts.
First of all, Virginia Woods, pursuant to paragraph 3 (b) of the building loan agreement, expressly warranted that the construction of the improvements "[would] not violate any building restrictions, zoning ordinances, building codes or other laws or regulations.” Unquestionably, the condition in question was a "building restriction”. The plaintiff was entitled to rely on this representation, which certainly did not create an affirmative duty on its part to mitigate damages. Moreover, the mortgage provided in paragraph 22 (9), that the lender could call the loan at its option upon: "[u]se of the premises in any way that violates any enforceable restrictive covenant upon the use of the premises.” Notwithstanding the clear violations of the loan documents, the plaintiff did not call a default in the mortgage prior to the date of maturity of the note, upon which the borrower continued to make pay *922 ments during the pendency of the New York City litigation. Had the plaintiff declared a default, it would have had the option of suing on the note, avoiding the question of the enforceability of the mortgage entirely. Plaintiff’s forbearance is not a mark against it.
Secondly, the New York City litigation was terminated by a settlement, prior to the maturity of the note, which permitted the construction of a reduced number of units; it never resulted in a determination adverse to title or which affected the enforceability of the mortgage. Thus, a condition precedent to making a claim was never realized (Bronen v New York Abstract Co., supra; Kenrich Props, v City Tit. Ins. Co., supra), and the failure to file notice of such a claim with the insurer, even if there were a duty to do so, which as a matter of law the court holds there was not, is moot.