[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff alleges that the defendant (Chicago) has refused to provide a defense in an action involved in a right-of-way. CT Page 3633
The facts are set forth in a joint stipulation of facts drawn up by counsel for the parties (Facts).
Nancy Berdon died during the prosecution of the suit and her husband Robert Berdon is the sole prosecutor of the suit.
The plaintiff pleads, in four counts, that
(a) the defendant had a duty to defend the title, but failed to do so;
(b) the defendant's acts and omissions constituted a violation of § 38-61 (CUIPA) and § 42-110a et seq. (CUTPA) of the General Statutes;
(c) the acts and omissions were reckless;
(d) the defendant failed to negotiate a settlement with the plaintiff.
The defendant filed an answer and six matters by way of special defenses:
1. The policy excepted the subject right-of-way.
2. Any defect or lien which may have existed was excepted in the policy.
3. The plaintiff agreed to take title in the names aforesaid.
(Robert I. Berdon and Nancy T. Berdon).
4. The complaint contains no basis to claim costs and attorney's fees.
5. The complaint contains no basis to state a claim of compensatory damages.
6. The claims are barred by the statute of limitations.
Those six special defenses were replied to.
I.
CT Page 3634
On April 29, 1890, Henry J. Stedman, Judge of Probate for the District of Branford, filed in the Branford Town Records a certificate of distribution for the estate of Francis B. Vedder. Therein there is set out a parcel of land to Hellen T. Morris, together with a right-of-way.
On September 11, 1984, title to seven deeds which constituted the "Undivided Property" passed to Robert Berdon and Nancy Berdon (Facts). On the same day, the Undivided Property was subdivided and sold to two other owners, and the Berdons retained the remainder, with an easement for access to a public highway.
After the conveyances were complete, the Berdons owned Lot #1, Paul Ford owned Lot #3, and Donald S. Dock and Elizabeth M. Dock owned Lot #2, lying between Lot #1 on the south and Lot #3 on the north. (Facts, Exhibit 3).
The Berdons purchased policy #844303905-A from the defendant. The date of the policy is 2:24 P.M. on September 11, 1984. The policy insured the title of the property, subject to various provisions. All of the aforesaid conveyances were made after the designated time.
By complaint dated March 20, 1986, Tilcon Minerals, Inc. brought suit against Donald Dock and Elizabeth Dock. On or about February 26, 1987, Robert Berdon and Nancy Berdon were added as party defendants. On March 26, 1987, by amended complaint, Paul Ford and Priscilla Purse were added, and the amended complaint sought an easement by grant, by necessity, and by prescription.
The plaintiff made timely demand on the defendant for coverage against the Tilcon lawsuit, and the defendant timely denied coverage (Facts). The plaintiff appeared by counsel in the Tilcon lawsuit and defended against Tilcon's claims.
The Berdons, the Docks, Ford, Purse and Tilcon settled the complaint by a stipulation judgment dated February 5, 1990, which expressly recognized Tilcon's easement as a grant, pursuant to the division of property set forth in the 1890 Probate Certificate of Distribution.
This lawsuit followed.
II.
CT Page 3635
General Principles
 "Title insurance is a contract of indemnity subject to the rules generally applicable to contracts of insurance. Title guaranty insurance is a contract whereby one agrees for a consideration to protect another against all loss or damage, not in excess of a specified sum, which insured may sustain by reason of existing defects in or unmarketableness of title to a described estate, mortgage, or interest, or because of leases and encumbrances changing the same, as of the date of the policy, or by reasons of defects in the title of a mortgagor to the mortgaged estate, or mortgaged interest." (Emphasis added).
Couch on Insurance, 2d, § 48-111.
"2. The Nature of Title Insurance.
 `A title policy, by its terms, defines and limits the liability of the company . . . .Title policy is unique in that it is retrospective, not prospective. It is designed to protect against past events, not possible future encumbrances . . .' Van Arsdale v. Metropolitan Title Guaranty Co., 103 Misc.2d 104, 108, 425 N.Y.S.2d 482 (Sup.Ct.Nassau Co. 1980)."
Marine Midland Bank v. Virginia Woods, 574 N.Y.S.2d 485, 488;151 Misc.2d 915 (Sup. 1991)
 "In accord with the general principle that insurance is a voluntary contract of the parties, a title insurance company has a right to select its risks, and cannot be compelled to insure a particular title merely because a court has declared it marketable. It is equally clear that where a policy describes the risks assumed, a loss, to be recoverable, must be within the risks so described.
Couch, supra, § 48-123.
 Title insurance ordinarily is concerned primarily with title defects (i.e., matters which may void the insured's title in whole or in part), encumbrances (e.g., easements), and matters affecting the marketability of the plaintiff's title . . . However, the parties to a title insurance contract have considerable freedom of contract with respect to CT Page 3636 the matters a title insurance policy will cover.
18 Causes of Action, 775, 785.
 Thus, while insurers will be liable under most types of insurance policies only for matters arising after the policy was issued, a title insurer will not be liable if the defect, encumbrance or other matter for which the plaintiff is seeking benefits came into being only after the issuance of the policy.
18 COA 775, 775
 If, however, an action was brought by a third person against the insured challenging the insured's title or other property interest, and the insurer failed to defend the insured's interest in that action, the insured may have a claim against the insurer for breach of its duty to defend. Insurers are free to contractually extend or limit the scope of their duty to defend, and it will therefore be necessary for an insured claiming a breach of the duty to defend to show that the policy imposed such a duty on the defendant in the circumstances of the case. In the absence of a contractual limitation, however, the insurer generally will have a duty to defend in essentially the same circumstances that could give rise to a right to indemnification benefits for a title defect or encumbrance . . . .[duty to defend is broader than duty to indemnify because duty to defend arise, s where there is potential liability and is not independent on actual liability]. This means that the insured generally will be able to establish a duty to defend if the insured can show that the third person's complaint against the insured alleged a defect or encumbrance for which the insured would be entitled to indemnification benefits. The determination whether the third person's complaint alleges a defect or encumbrance covered by the insured's policy may have to be made on the basis of an examination of the complaint and the policy without considering evidence that is extrinsic to those documents. (Emphasis added).
18 COA 775, 784 CT Page 3637
 A title insurer has not only the right, but also the duty, to defend an action involving the validity of the insured title. A title insurer's obligation to defend involved relieving the insured of any duty and expense of having counsel in court, and the insurer's assumption of the responsibility and burden of the defense.
Appleman Insurance Law and Practice, § 5215.
 In an action against an insurer to recover benefits under a title insurance policy, the plaintiff will obviously have to plead and prove the elements common to any action to recover insurance benefits. These include the issuance of a title insurance policy by the defendant covering the property in question, and the plaintiff's status as a named beneficiary or other person entitled to recover under that policy.
 The plaintiff ordinarily will also have to plead and prove that he or she duly filed a claim for benefits and that the claim was denied by the defendant. (Emphasis added).
18 COA 775, 791.
 The plaintiff in an action to recover benefits under a title insurance policy generally will have to establish the presence of the title defect, encumbrance, or other matter affecting the plaintiff's interest in the covered property on which the claim for benefits is based. Although the basis of the plaintiff's claim will depend on the terms of the policy, this will frequently involve establishing the existence of a title defect or encumbrance. In many cases, the existence of a title defect or encumbrance will be obvious and establishing it will require only routine pleading and proof. However, a serious dispute as to the existence of a defect or encumbrance may arise where the plaintiff is seeking benefits for a loss of property value or use attributable to something which might not be considered to be a title defect or encumbrance. A similar dispute may arise where the policy insured the marketability of the plaintiff's title and there is a question whether the title is marketable. While the plaintiff generally will have to establish the actual existence of a defect CT Page 3638 or encumbrance in order to recover directly related benefits, the plaintiff may be able to recover benefits for an unmarketable title by showing that the apparent or possible existence of a defect or encumbrance impaired the marketability of the plaintiff's title, even though the supposed defect or encumbrance was ultimately found not to exist. (Emphasis added).
18 COA 775, 795.
 Where a title insurance policy extends coverage to the marketability of the plaintiff's title in accordance with the usual practice, the plaintiff obviously may be able to establish a right to recover under the policy by showing that his or her title is unmarketable. Generally, the plaintiff will be able to establish unmarketability by showing that the title is in doubt, that it might expose the holder to litigation, or that it would not be willingly accepted by a reasonable buyer with knowledge of all the relevant facts.
18 COA 775, 779.
 The plaintiff in an action to recover benefits under a title insurance policy may have to show that the defect, encumbrance, or other matter affecting the plaintiff's interest for which benefits are sought was within the scope of the policy's coverage. With respect to defects and encumbrances, this usually will present no substantial difficulty, because title insurance policies are generally drafted so as to cover any title defects or encumbrances that are not specifically excluded by an exception. The terms of the policy may be decisive in determining the scope of coverage, especially where the insurer extended only limited coverage when drafting the policy. See, e.g., Safeco Title Insurance Co. v. Moskopoulos 116 Cal.App. 3rd 658, 172 Cal.Rptr. 248 (1981). (Emphasis added).
18 COA 775, 801.
An "encumbrance" is defined as follows: CT Page 3639
 "An encumbrance may be defined as any right to, or interest in, land which may subsist in another to the diminution of its value but consistent with the passing of the fee."
Black's Law Dictionary, 4th Edition. Knudson v. Wicks,394 F. Sup. 963, 978.
A "defect" is defined as follows:
 ". . . (t)he want or absence of something necessary for completeness or perfection; a lack or absence of something essential to completeness; a deficiency in something essential to the proper use for the purpose for which a thing is to be used."
Black's Law Dictionary, 4th Ed., Bel-Air Motel Corp. v. TitleIns. Corp., 183 N.J. Super. 551, 444 A.2d 1119.
 The difference between a "defect" and an "encumbrance" is not usually critical.
18 COA 775, 796.
 The plaintiff in an action to recover benefits under a title insurance policy may have to prove that he or she sustained an actual loss attributable to the defect or encumbrance for which recovery is sought. This is because title insurance policies generally operate as contracts of indemnification, not as guarantees, and the plaintiff therefore will not be entitled to recover unless he or she has sustained some loss for which an indemnity can be paid.
18 COA 775, 803.
 . . . the defendant may be able to raise a defense by showing that the plaintiff's title insurance policy simply does not extend coverage to that particular flaw. This defense may be most likely to succeed where the parties to the title insurance contract only negotiated for coverage of a particular matter, and the defendant did not issue the more typical title insurance policy which generally covers all defects or encumbrances which are not expressly excluded. (Emphasis added). CT Page 3640
18 COA 775, 810, 811.
 In order to establish the effectiveness of an express exception, it may be necessary to show that the exception or limitation was expressed with sufficient clarity to overcome any reasonable expectation on the part of the insured that the defect or encumbrance in question would be covered.
18 COA 775, 822.
 The defendant in an action to recover benefits under a title insurance policy will of course not be liable for a particular defect or encumbrance where the terms of the policy expressly except that defect or encumbrance from coverage. (Emphasis added).
18 COA 775, 821.
 Insofar as the plaintiff in an action against an insurer to recover benefits under a title insurance policy is basing his or her claim in provisions in the policy extending coverage to title "defects" or "encumbrances," the defendant will not be liable where the matter of which the plaintiff is complaining does not constitute a "defect" or "encumbrance."
18 COA 775, 813.
 The defendant in an action against an insurer to recover benefits under a title insurance policy may sometimes be able to establish a defense on the basis of an exception frequently found in title insurance policies for defects or encumbrances created, suffered, assumed, or agreed to by the insured. In order to establish the applicability of such an exception, it generally will be necessary to show that the defect or encumbrance resulted from an intentional or deliberate act of the plaintiff in creating, suffering, assuming, or agreeing to it. The exception will not apply to defects or encumbrances which are attributable to the plaintiff's mere inadvertence CT Page 3641 or negligence. Accordingly, the defendant will have to show both that the plaintiff knew of the defect or encumbrance and had the power to avoid it.
18 COA 775, 830.
 The named insured will obviously be the most likely plaintiff in an action to recover benefits under a title insurance policy.
18 COA 775, 840.
 III. A.
In the First Count of his complaint, the plaintiff alleges that the defendant "had a duty to defend its insureds arising out of the incident hereinbefore set forth;" . . . to wit; the action brought by Tilcon Minerals, Inc. to establish the easement.
The first matter to be defined is the term "coverage." "Coverage" is defined, "[I]n insurance, amount and extent of risk contractually covered by insurer."
Black's Law Dictionary, 6th Ed.
 "The defendant may be able to raise a defense by showing that the plaintiff's title insurance policy simply does not extend coverage to that particular flaw."
18 COA, supra, 775, 810, 811.
 "In order to establish the effectiveness of an express exception, it may be necessary to show that the exception or limitation was expressed with sufficient clarity to overcome any reasonable expectation on the part of the insured that the defect or encumbrance in question would be covered."
18 COA, supra, 775, 832.
 The defendant in an action to recover benefits under a title insurance policy will of course not be liable for a particular defect or encumbrance where the terms of the policy expressly except that defect or encumbrance from coverage. CT Page 3642
18 COA, supra, 775, 821.
The right-of-way referred to in the certificate of devise is as follows: following a grant of land to Arthur G. Vedder, the certificate states: "Hellen T. Morris has a right-of-way to pass and repass across this piece of land." Thereafter, there is a grant of the abutting land to Hellen T. Morris.
On March 26, 1987, Tilcon Minerals, Inc. (Tilcon), the successor in title of land to Hellen T. Morris, brought suit. Tilcon alleged that Donald and Elizabeth Dock were threatening to cut off the right-of-way to the Tilcon property. The writ was brought in three counts — (1) Easement by grant, (2) Easement by necessity, (3) Easement by prescription.
This generated the flow of correspondence between the plaintiff's attorney and the attorney for the defendant.
The plaintiff made timely demand on Chicago Title for coverage against the Tilcon lawsuit and Chicago Title timely denied coverage. (Facts, #11).
By the time of the judgment, Tilcon had withdrawn the count claiming an easement by prescription. (Facts, #13).
The Berdons, the Docks, Ford, Purse and Tilcon settled the Tilcon action by Stipulated Judgment dated February 5, 1990. The stipulated judgment expressly recognized Tilcon's easement as an easement by grant arising out of the division of property of Francis Vedder as set forth in the 1890 Probate Certificate of Distribution. Pursuant to the stipulated judgment, judgment entered for Tilcon on its claim of an easement by grant and for the defendants on Tilcon's claim of an easement by necessity. (Facts, #13).
Our Supreme Court has recognized the difference between an easement by grant and an easement by necessity.
 "Furthermore, his claim is unsound as applied to this case. Even if evidence concerning necessity had been offered and admitted, it would have been immaterial to this case because of the terms of the grant . . . . (Citations omitted). The easement of way was created, and its purpose expressly defined, by the CT Page 3643 terms of the defendants' deed. It was not a way of necessity since it was not based on the presumption of a grant or reservation arising from the circumstances of the case . . . . (Citation omitted). Whether, had there been no express grant, the circumstances at the time of the original conveyance could have given rise to a way of necessity which would have terminated upon the passing of the necessity is of no moment since here we have an express grant not conditioned on necessity."
Jones v. Miller, 151 Conn. 541, 543.
 "This long-continued nonuser [30 years] by the owners of the dominant tract of the easement of way created by grant did not extinguish it. As to the absence of a duty on the part of the owner of the dominant tract to use a way in order to maintain title to it, the law has been stated as follows: "`A person who acquires title by deed to an easement appurtenant to land has the same right of property therein as he has in the land and it is no more necessary that he should make use of it [the easement] to maintain his title than it is that he should actually occupy or cultivate the land. Hence his title is not affected by nonuser, and unless there is shown against him . . . loss of title in some of the ways recognized by law, he may rely on the existence of his property with full assurance that when occasion arises for its use and enjoyment he will find his rights therein absolute and unimpaired.'" . . . (Citation omitted).
 "In conformity to the law as thus stated, it is uniformly held that an easement created by grant cannot be lost by mere nonuser . . . .
 "Minor Wurts on Real Property, § 108, make the following general statement of the law: `An easement, once created, is not extinguished by the mere acts of the servient owner in themselves, however adverse they may be to the enjoyment of the easement by the dominant proprietor, and however clearly they may indicate the desire and intention of the servient owner to put a stop to the use of his land. There must be added to those acts other circumstances showing an CT Page 3644 intention on the part of the dominant owner to abandon or release the easement.'"
 "In the case at bar, there were no adverse acts by the servient owner made with intent to stop the use of the right of passway over the servient tract."
American Brass Co. v. Serra, 104 Conn. 139, 145, 151.
 In the instant case, the acts of the servient owner were commenced in 1987.
 ". . . A stipulated judgment has been defined by our Supreme Court as a contract of the parties acknowledged in open court and ordered to be recorded by a court of competent jurisdiction. (Citations omitted). The essence of the judgment is that the parties to the litigation have voluntarily entered into an agreement setting their dispute at rest and that, upon this agreement, the court has entered judgment conforming to the terms of the agreement . . . .
 Because we consider a stipulation a contract between the parties approved by the court, its terms may not be extended beyond the agreement entered into."
State v. .2 Acres Known as 319 Jackson St., 39 Conn. App. 40, 43.
The plaintiff signed the stipulated judgment, which established an easement appurtenant to Tilcon's land, with acknowledgements, on February 5, 1990. The plaintiff commenced this action on September 4, 1990, after counsel for the defendant had denied her claim for legal fee and damages.
"A `right-of-way' is a term used to describe a right belonging to a party to pass over land of another." Words andPhrases, 1995 Pocket Part.
The exception of said right-of-way is as follows:
 2. Rights of way as set forth in a Probate Certificate of Distribution to Arthur G. Vedder, dated April 29, 1890 and recorded in Volume 41 at Page 462 of the Branford Land Records. (Facts, Exhibit 4). CT Page 3645
Arthur G. Vedder is the predecessor in title to the land conveyed by the plaintiff.
The right-of-way, which was the gravamen of the law suit, was excepted from coverage. (Facts, Exhibit 3, Schedule B-2)
 "A title policy, by its terms defines and limits the liability of the company. Title insurance is unique in that it is retrospective, not prospective. It is designed to protect against past events, not possible future encumbrances."
Van Arsdale v. Metropolitan Title Guaranty Co, 425 N.Y.S.2d 482,103 Misc.2d 104, 108.
The court admits two letters into this record.
(a) Letter of the plaintiff's counsel to the defendant dated May 13, 1987, putting the defendant on notice of the claim.
(b) Letter of the defendant to the counsel for the plaintiff, dated May 26, 1987, declining coverage.
The following excerpts from the defendant are relevant: (letter from defendant to plaintiff, May 26, 1987)
"It is our understanding that you are requesting that our company defend the insureds in the above mentioned proceeding.
Our analysis and position herein is as follows:
(A) An examination of the policy of title insurance indicates two relevant exceptions in Schedule B as follows:
"Schedule B
 This policy does not insure against loss or damage by reason of the following:
. . . .
2. Rights of way as set forth in a Probate Certificate of Distribution to Arthur G., Vedder, dated April 29, 1890 and recorded in Volume 41 at Page 462 of the Branford Land Records. CT Page 3646
. . . .
4. Notes and conditions as shown on the Map referenced in Schedule A (Description)."
 (B) Also relevant, since "marketability" has been mentioned, is the following language in the front page of the policy:
 "Subject to the exclusions from coverage, the exceptions contained in Schedule B and the provisions of the conditions and Stipulations hereof, Chicago Title Insurance Company . . . insures . . . against loss or damage . . . by reasons of . . . . (Emphasis added) . . . ."
 The gist of complaint and amended complaint, is to enforce the right of way as set forth in Probate Certificate of Distribution to Arthur G. Vedder, dated 4/29/1890 and recorded in Volume 41 at page 462 of the Branford Land Records. Our company, per exception 2 mentioned above, has no responsibility thereon. This exception means that we do not insure against its existence and all the consequences thereof.
 If the plaintiff additionally claims to hold this ROW by necessity and/or by prescription, it makes no difference to our non-responsibility. In other words, we do not insure said ROW, and if someone wishes to enforce it, since we have nothing to do with it, certainly we have no obligation to defend it, no matter what the theory of the plaintiff may be.
Furthermore, exception 4, excludes from coverage the "Notes and Conditions" as shown on the Map referenced in Schedule A (description)". An examination of said map shows the right of way which appears to be the subject of the complaint.
Mr. Frechette posed three issues in his letter, and we will answer them as follows:
(1) Since we excepted the matters herein, title and interest therein are not vested otherwise than as indicated in the policy.
(2) The defect or lien which may exist was excepted in the policy;
(3) "Marketability" insurance in the policy is subject to the exceptions, etc., in the policy. (Emphasis added). CT Page 3647
(4) If the title impacts adversely against the value of the property, since the insureds purchased the premises subject to it, they agreed to take title in that manner. (Emphasis in original).
Consequently, our company has no responsibility to defend the insureds in this action."
 "It is the function of the court to construe the provisions of the contract of insurance . . . ."An insurance policy is to be interpreted by the same general rules that govern the construction of any written contract and enforced in accordance with the real intent of the parties as expressed in the language employed in the policy . . . ."The determinative question is the intent of the parties, that is, what coverage the . . . [plaintiff] expected to receive and what the defendant was to provide, as disclosed by the provisions of the policy." If the words in the policy "are plain and unambiguous the established rules for the construction of contracts apply, the language, from which the intention of the parties is to be deduced, must be accorded its natural and ordinary meaning, and courts cannot indulge in a forced construction ignoring provisions or so distorting them as to accord a meaning other than that evidently intended by the parties."
Hammer v. Lumbermen's Mutual Casualty Co., 214 Conn. 573, 583. (Internal citations omitted).
By including the language in Schedule B-4 of the exceptions, the defendant did what was necessary to bring uniformity to the description of the parcel insured. The description in Schedule A states, "Said premises are more recently shown on a map entitled . . . .". Schedule B-4 eliminates all reference to any easement on the map — except the easement in Schedule B-2. This is a correct representation of the parcel in the policy a perimeter survey with no interior markings, except the right-of-way.
It is patently clear that the easement regarding the right-of-way is excluded from the coverage of the policy. (Schedule B-2). CT Page 3648
 "The controlling legal principal is succinctly stated in 9 Appleman, Insurance Law Practice (1970 Cum. Supp.) § 5216, pp. 19, 20, as follows:
`No duty [to defend] where no coverage.'
 By its express terms, the policy in question clearly limits the insurer's obligation to defend. The insurer is only obliged to defend against suits "founded upon an alleged defect . . . insured against by this policy . . . ." The defect in this case was the fraudulent character of the purported conveyance. Such defect was known to plaintiff but not disclosed to his insurer. We hold that this defect was expressly excluded from coverage in the policy . . . ."
Ginger v. American Title Insurance Company, 29 Mich. App. 229, 185 N.E.2d 54, 56.
Said map (Exhibit 3) shows a "Path". See "Map Standards", "Code of Recommended Practice for Standards of Accuracy of Survey and Maps October 1976, " as referred to in Regulations of State Agencies, Sec. 20-300-10g: "Easements and encroachments apparent from an inspection of the land records and the subject premises shall be shown."
The "Path" is clearly the right-of-way which was excepted from coverage in the policy. The map filed with the "Facts" (Exhibit 3) is certified as an A-2 survey. The exception clearly omits the easements on the map, because they were in fact not in esse at the time of the policy.
 "The rule that any ambiguity in an insurance contract will be resolved adversely to the insurer is not without limitation. Some actual or apparent ambiguity must be present before the rule comes into play."
Safeco Title Ins. Co. v. Moskopoulos, 116 Cal.App. 3rd 658,172 Cal.Rptr. 248, 252.
No ambiguity exists as to the insurance policy presented in this case.
The easement owned by Berdon is excluded from coverage, as are all "defects liens, encumbrances, adverse claims, or other CT Page 3649 matters (a) created, suffered, assumed or agreed to by the insured claimant . . . (d) attaching or created subsequent to Date of Policy. "
The language of the Tilcon complaint states:
"However, defendants Robert and Nancy Berdon own an easement across part of the servient estates which is concurrent in part with the plaintiff's easement." This refers to "an easement." A review of the policy reveals no easement owned by the Berdons, insured by the policy.
 B.
The second matter to be determined is the duty to defend.
 "In Connecticut, the duty to defend rests solely on whether the allegations of the claim in the underlying action potentially bring the claim within the scope of the coverage purchased. City of West Haven v. Liberty Mut. Ins. Co., 639 F. Sup. 1012, 1017 (D.Conn. 1986). An insurer may not refuse the tendered defense of an action unless a comparison of the policy with the underlying complaint shows on its face that there is no potential for coverage . . . . In making the comparison any ambiguous or equivocal expressions in the policy will be strictly construed against the insurer. Clinton v. Aetna Life Sur. Co., 41 Conn. Sup. 560, 563 (1991) (citation omitted)."
EDO Corporation v. Newark Insurance Co. et al, 1995 WL 519466, p. 10, F. Supp. (D.Conn.).
 ". . . it is well settled that the duty of the insurance company to defend the insured depends exclusively upon the allegations in the underlying complaint against the insured. If an allegation of the complaint falls even possibly within the coverage, then the insurance company must defend the insured."
City of West Haven v. Liberty Mut. Ins. Co., 639 F. Sup. 1012,1139 (D.Conn. 1986).
 "As Judge Learned Hand has stated, the duty to defend means "that the insurer will defend the suit, if the injured party states a claim, which, qua claim, is for an injury CT Page 3650 `covered' by the policy; it is the claim which determines the insurer's duty to defend; and it is irrelevant that the insurer may get information from the insured, or from any one else, which indicates, or even demonstrates, that the injury is not in fact `covered.' The insurer has promised to relieve the insured of the burden of satisfying the tribunal where the suit is tried, that the claim as pleaded is `groundless.'"
Missionaries of the Co. of Mary. Inc. v. Aetna Casualty SuretyCo., 155 Conn. 104, 112 (1969) citing Lee v. Aetna C. S. Co.,178 F.2d 750, 751 (2d Cir. 1949).
 "Under Connecticut law, the duty to defend turns solely upon whether the complaint alleges an occurrence which, if proven, would fall within the coverage of the insureds' policy. It is irrelevant to the existence of a duty to defend whether or not the complaint is groundless and whether or not the insurer will eventually be able to establish that it has no duty to indemnify the insured."
Firestine v. Poverman, 388 F. Sup. 948, 950 (D.Conn. 1975).
 "To avoid the duty (to defend,] therefore[,] the insurer must demonstrate that the allegations in the underlying complaints are `solely and entirely' within specific and unambiguous exclusions from the policy's coverage." (citation omitted). Moreover, in assessing whether the allegations of the underlying claim potentially fall within coverage, the insurer is precluded from, looking beyond the four corners of the underlying complaint — . . . . This rule applies even if the claims appear meritless or to lack a factual basis. Amro, 936 F.2d at 1426; Firestine v. Poverman, 388 F. Sup. 948 950 (D.Conn. 1975).
EDO Corporation, supra p. 8.
 "There are three important legal rules and canons of construction that must be borne in mind in ruling on (Middlesex's) motion for summary judgment. The first is that
 "Where an insurer sets up a special exclusion for the purpose of withdrawing from the coverage a specific liability it was unwilling to provide indemnity for, the burden is on CT Page 3651 the insurer to prove that exception to the risk." (citation omitted).
 "The second rule is that language in an insurance contract is to be given its ordinary and natural reading. Where the language is ambiguous and the ordinary meaning is unclear the words will be construed so as to favor the insured because it was the insurer who wrote the language." (citation omitted).
 The third rule is that the insurance policy must be construed as a whole, and all of its relevant provisions are to be considered in connection with one another."
Firestine, supra, p. 951; Krevolin v. Dimmick,39 Conn. Sup. 44, 51.
 "`The duty to defend has a broader aspect than the duty to indemnify and does not depend on whether the injured party will prevail against the insured.' Missionaries of the Co. of Mary. Inc. v. Aetna Cas. Sur. Co., 155 Conn. 104, 110
(1967) (citation omitted). By contrast, the duty to indemnify depends upon `whether the coverage in question in fact exists.' Saint Paul Fire Marine Ins. Co., 22 Conn. App. at 382 (citations omitted)."
EDO Corporation, supra, p. 9.
 "The court finds no reason, therefore, to abandon the well-settled principle that, for the purposes of assessing whether a claim has triggered the duty to defend, the court is precluded from looking beyond the four corners of complaint or other document that constitutes the claim."
EDO Corporation, supra, p. 9 FN8.
 "When the plaintiff requested the defendant to defend [Shuhi's action,] the defendant was called upon to exercise its judgment as to what was required of it under its contractual obligation to the plaintiff. It could either refuse to defend or it could defend under a reservation of its right to contest coverage under the various avenues which would subsequently be open to it for that purpose."
Missionaries of Co. of Mary. Inc., supra, p. 113. CT Page 3652
 "Under Connecticut case law, "`it is the claim which determines the insurer's duty to defend; and it is irrelevant that the insurer may get information from the insured, or from any one else, which indicates, or even demonstrates, that the injury is not in fact "covered." . . .'" Missionaries of the Company of Mary, Inc. v. Aetna Casualty Surety Co., 155 Conn. 104, 112, 230 A.2d 21 (1967), quoting Lee v. Aetna Casualty Surety Co., 178 F.2d 750 (2d Cir. 1949). The insurer's duty to defend "arises if the complaint states a cause of action which appears on its face to be within the terms of the policy coverage." LaBonte v. Federal Mutual Ins. Co., 159 Conn. 252, 255, 268 A.2d 663 (1970). In the present case, [Maryland's] duty to defend [Exel and Walsh] must be determined, by the allegations contained in the [Arpin] suit.
 The trial court thoroughly reviewed the allegations in both the [Arpin] suit and the [Exel] suit, and relied on the specific allegations of the [Arpin] suit to determine whether [Maryland] has a duty to defend [Exel and Walsh]. It concluded that the [Arpin] suit does not state a cause of action that on its face appears to be within the terms of the insurance policy. We agree."
Exel Logistics. Inc. v. Maryland Casualty Co., 40 Conn. App. 415,419, 420 (1996).
The policy was timed 2:24 P.M. on September 11, 1984. This shows seven warranty deeds being recorded in volume 361 at pages 411-443 of the Branford Land Records. The Dock deed is recorded in volume 336 pages 444-450, at 2:26 P.M.
The Ford deed was recorded in volume 336 page 460-464 at 2:30 P.M.
The Dock deed contains a reservation for the Berdons of a twenty foot driveway easement, which is set forth as the map (Exhibit 3). The path is shown as crossing the Tilcon easement.
The easement reserved by the Berdons was not created until 2:26 P.M. Schedule B-4 removed the "notes and conditions" from the map, for the purposes of the policy.
"The insurer's duty to defend arises if the complaint states CT Page 3653 a cause of action which appears on its face to be within the terms of the policy coverages." Exel Logistics, Inc., supra, p. 419.
No such cause of action is, stated in the instant case.
 IV.
The plaintiff has listed several other claims in his complaint.
1. Easement by prescription and by implication.
The court in the Tilcon suit found that Tilcon had an easement by grant. This dispenses with the evidence required of both alternatives. Jones v. Miller, supra, 543; D'Amato v. Weiss,141 Conn. 713, 717.
2. Muniment of Title.
Paragraph 15 (Exhibit 5) states that Tilcon acquired an easement and right-of-way by warranty deed on or about April 22, 1922 from Ellen v. Fisk. The deed is over 60 years prior to the time when marketability was determined. See Sec. 47-33b and Sec. 49-33c.
3. The Chicago Policy.
The plaintiff makes the point that the policy contains an easement, "which was pled in the complaint." Further, the brief states, "The location of an easement can very well make property unmarketable," and "that clearly states Chicago insured the risk."
But the policy excepts the, easement. There is no doubt that
(a) any claim could be brought which is false or groundless.Firestine, supra p. 950.
(b) the exclusion of the Tilcon easement is absolutely clear and unambiguous. Safeco, 172 Cal.Rptr. 248, 252; Firestine, supra, p. 951 (First Rule).
(c) there is no ambiguity or equivocable expressions in the policy. Safeco, supra; Firestine, supra, p. 951 (Second Rule). CT Page 3654
(d) the effective time of the policy was September 11, 1984 at 2:24 P.M., and excepts from the coverage
a. Taxes to Town of Branford.
b. The Tilcon easement dated from April 29, 1890.
 c. Rights and easement of others below the high water mark of Long Island Sound.
d. Note and Conditions shown on the Map.
Firestine, supra, p. 951 (Third Rule).
(e) Tilcon has an appurtenant easement; therefore, the language of easement by implication and necessity are superfluous.
4. The title was marketable.
 ". . . as to unmarketability of appellant's title, there is nothing in the record that indicates that the title was in any way unmarketable on the effective date of the policy. Any effect [the recording of the Klass lis pendens] had on the marketability of the title occurred after the effective date of the policy and is outside the policy coverage. An insurance company may limit the coverage of a policy issued by it. When it has done so, the plain language of the limitation must be respected."
 Safeco, supra, 172 Cal.Rptr. 248, 248. The same is true in the instant case. The plaintiff "agreed to take title in that manner." Saab letter, May 27, 1987.
None of the above issues have been pleaded.
 "The purpose of the complaint is to limit the issues to be decided at the trial of a case and is calculated to prevent surprise. It is fundamental in our law that the right of a plaintiff to recover is limited to the allegations in his complaint. "
Montano v. Kin-Therm, Inc., 4 Conn. App. 187, 190, 191 (1985).
The following cases illustrate instances where the title CT Page 3655 company was successful in the defense of the title policy in suits by plaintiffs to recover benefits under the title insurance policy.
(a) Bronen v. New York Abstract Co., 19 A.2d 821, 243 N.Y.S.2d 664 (1963). (Coverage of policy does not cover a Zoning violation).
(b) Sullivan v. Tomgil Building Corp., 46 Misc.2d 613,260 N.Y.S.2d 465 (1965). (Buyer, who knowingly purchased a parcel of land with an easement, had closed the transaction without mentioning the easement to the insurer, held bound by the easement).
(c) Walters v. Marks, 83 Cal.App.3d 1, 147 Cal.Rptr. 655
(1978). (Complaint alleges facts that were specifically excluded from coverage).
(d) Safeco Title Ins. Co. v. Moskopoulos, 116 Cal.App.3d 668,172 Cal.Rptr. 248 (1981). (Insuring claims of the plaintiff's policy do not require insurer to provide a defense to the action).
(e) Bernhard v. Reischman, 33 Wash. App. 569, 658 P.2d 2
(1983). (Plaintiff failed to obtain a survey for his policy; therefore, there was no coverage.
(f) Pioneer Natl. Title Ins. v. Fourth Commerce, (S.Ct. Fla)487 So.2d 1051 (1986). (Claim that the date of the joint endorsement of the policy was one month prior to the acquisition of title barred any claim).
(g) Marine Midland Bank v. Virginia Woods, 574 N.Y.S.2d 485,151 Misc.2d 915 (Sup. 1991). (Fact that the insured relied on fee policy seven years prior to closing, instead of obtaining a release; the condition was not released, and the restriction contained in the policy was binding on the property).
(h) N.E. Properties. Inc. v. Chicago Title Insurance Co.,660 A.2d 926 (Me 1995) (S.J.C.M.). (Insured and owner of a country club, purchased a policy as part of the mortgage, but did not reference the declarations containing the conditions shown therein. The insurer has no obligation to the insured, since the action would be past the date of policy). CT Page 3656
 V.
In sum, the Tilcon easement was amply laid out by the surveyor on the map; it was prior in time to the easement laid out by the plaintiff; it was shown by the search of the land records and the defendant was correct in taking the action it did. The claim made by the plaintiff was based on an easement notin esse at the time of me policy.
In the First Count, the plaintiff failed to show a duty (as alleged in ¶ 12) to defend its insures arising out of the incident. Since the other three counts depend on the duty to defend, the four counts of the complaint must fail. Judgment may enter for the defendant on all four counts.
As to the Special Defenses, judgment may enter for the defendant on the First, Second, Third, Fourth and Fifth Special Defenses, and for the plaintiff on the Sixth Special Defense.
The diligence of the counsel for both sides is appreciated.
Robert P. Burns, Judge