MISSIONARIES OF THE COMPANY OF MARY, INC. *v.* THE
AETNA CASUALTY AND SURETY COMPANY

KING, C. J., ALCORN, HOUSE, THIM and RYAN, Js.

Argued March 9—decided May 10, 1967

*Philip S. Walker,* with whom, on the brief, was *Ralph C. Dixon,* for the appellant (defendant).

*John F. Scully,* with whom were *Robert M. Fitzgerald* and, on the brief, *David T. Ryan,* for the appellee (plaintiff).

ALCORN, J. The defendant had issued to the plaintiff an owners', landlords' and tenants' liability insurance policy covering property owned and occupied by the plaintiff as a monastery. During the effective period of the policy, a negligence action was brought against the plaintiff by a person who was injured when he fell into an open ditch on the property. The plaintiff requested the defendant to defend the action. The defendant refused to do so, and the plaintiff employed counsel to defend. A verdict was rendered against the plaintiff which the trial court set aside, and thereafter the plaintiff settled the case for $15,000. The plaintiff then brought the present action to recover the amount paid in defending and settling the case. The court rendered judgment for the plaintiff to recover the $15,000 paid in settlement, $5000 in counsel fees, $1325 for the expenses of preparation and trial with interest amounting to $1386.12, and $1500 counsel fees in the present action. The defendant appeals from that judgment.

The plaintiff has withdrawn its claim for counsel fees in the present action, and the issue on appeal involves only the correctness of the judgment in awarding the other items of damage, the reasonableness of which is not disputed. The defendant claims to be relieved of liability by an exclusion clause in its policy and that it had no duty to defend the plaintiff in the negligence action. The court's finding is not subject to correction.

The plaintiff's property consisted of a tract of land on which were located a large stone monastery occupied as a residence by the priests, seminarians and brothers, a dwelling house, a garage containing a walk-in freezer, and a pump house. The dwelling house is immaterial to the present controversy. The

only source of electric power for the monastery, garage, freezer, pump house and various electrical appliances, such as washing machines, an electric dryer, a cooking range and the like, was a temporary overhead wire carrying 100 amperes of current which ran from a pole situated 125 feet distant. Constant power failures had occurred which required the changing of fuses, and the wiring for the existing electrical system was worn, damaged by excessive heat, overloaded, inadequate and a fire hazard. During the summer of 1960, the plaintiff planned an addition to the monastery to provide additional accommodations for the resident brothers and seminarians. In September, 1960, the plaintiff contracted with Bonvicini Building Company, Inc., hereinafter called Bonvicini, that Bonvicini would furnish all labor and materials to construct the addition except for exterior stone work, plumbing and heating. Bonvicini's contract included all electrical wiring within the new addition, the current for which was to be brought to a meter board in the new addition from a meter board in the existing monastery. Bonvicini sublet the electrical work to the D. M. Laraia Electrical Engineering Company, hereinafter called Laraia. The exterior stone work was laid by the seminarians and brothers, and the plumbing and heating was independently contracted for by the plaintiff. While Laraia was at work under its contract with Bonvicini, spokesmen for the plaintiff and Laraia discussed the condition of the existing electrical system. They concluded that it was then overloaded and that an extension of it into the new addition would be an increased hazard, even though only a light load of 20 to 25 amperes would be required to serve the new addition. A 200-ampere system was decided upon, the

wiring for which Laraia would place underground in a ditch to be dug by the seminarians and brothers. The ditch was dug from the power pole to an existing retaining wall of the monastery courtyard on which the new addition was located. Laraia's agreement to replace the existing overhead wiring with the underground wiring system was made directly with the plaintiff and was independent of Laraia's contract with Bonvicini. The new line would supply all electrical power for the existing buildings and facilities plus the 20 or 25 amperes required by the new addition. After the ditch had been dug, Stephen Shuhi, while he was delivering a tank of gas on the plaintiff's premises, fell into the ditch and was injured. At the time of Shuhi's fall, Bonvicini had nearly completed its work on the new addition. Whether Laraia's interior electrical work in the new addition under its contract with Bonvicini had been completed does not appear.

Shuhi brought suit against the plaintiff to recover damages for his injuries, alleging that the plaintiff (the defendant in that action) was the owner and in possession and control of the real estate, that it had ordered a tank of gas from Shuhi's employer to be delivered to its property, and that Shuhi, while he was delivering the tank of gas at a location designated by the plaintiff, fell into a nearby ditch which was about three feet deep and was substantially filled with snow. Shuhi alleged that the plaintiff (the defendant in that action) was negligent in causing the ditch to be dug and in leaving it unguarded when it knew that Shuhi would be making a delivery in the area and would be likely to fall into the ditch; in failing to warn him of the presence of the ditch; in failing to protect the ditch by barricades when it knew that the ditch contained snow

and constituted a concealed trap; and in failing to use reasonable care to maintain its property in a reasonably safe condition for persons lawfully thereon.

By the terms of the policy which the defendant had issued to the plaintiff, the defendant agreed "[t]o pay on behalf of the Insured [plaintiff] all sums which the Insured shall become legally obligated to pay as damages because of bodily injury, . . . sustained by any person, caused by accident and arising out of the hazards hereinafter defined." The policy provided that the defendant would "defend any suit against the Insured alleging such injury, . . . and seeking damages on account thereof, even if such suit is groundless, false or fraudulent".

The hazards covered by the policy were described as "[t]he ownership, maintenance or use of the premises, and all operations necessary or incidental thereto." The policy contained the following exclusion: "The policy does not apply: . . . (c) . . . to . . . structural alterations which involve changing the size of . . . buildings or other structures, new construction or demolition operations, by the named Insured or his contractors or their subcontractors".

When Shuhi's action was brought, the plaintiff repeatedly requested the defendant to defend the action, but the defendant refused on the ground that liability for the injuries allegedly sustained by Shuhi was excluded by the terms of the policy. The plaintiff then engaged independent counsel to defend against the Shuhi action with the result already related. The defendant's basic claim is that the ditch into which Shuhi fell was a hazard arising from the construction of the new addition and consequently the injury was excluded from the policy

coverage, and that that exclusion relieved the defendant of any obligation to defend the action. The trial court concluded that the ditch existed as an operation in the plaintiff's replacement of an existing facility on its property which was independent of the construction of the new addition; that the defendant was liable under the insurance policy issued to the plaintiff; that the defendant was obliged, under the terms of that policy, to defend the suit brought by Shuhi against the plaintiff; and that, having failed to do so, the defendant was liable to the plaintiff for the damages awarded in the judgment appealed from.

The question whether the defendant had a duty to defend the action brought by Shuhi depends on whether the complaint in that action stated facts which appeared to bring Shuhi's claimed injury within the policy coverage. *Andover* v. *Hartford Accident & Indemnity Co.,* 153 Conn. 439, 442, 217 A.2d 60; see, for a collection of cases on this subject, note, 50 A.L.R.2d 458, 468 § 6. The duty to defend has a broader aspect than the duty to indemnify and does not depend on whether the injured party will prevail against the insured. *Smedley Co.* v. *Employers Mutual Liability Ins. Co.,* 143 Conn. 510, 516, 123 A.2d 755. This general rule is practically universally recognized. *Sims* v. *Illinois National Casualty Co.,* 43 Ill. App. 2d 184, 190, 193 N.E.2d 123.

The hazards against which the defendant insured the plaintiff were "[t]he ownership, maintenance or use of the premises, and all operations necessary or incidental thereto." Shuhi's complaint, in substance, alleged that he was injured while he was lawfully on the plaintiff's property when he fell into the unguarded ditch which the plaintiff negligently

caused and allowed to exist on the premises. The complaint, on its face, appeared to bring the injury within the provision of the policy which insured the plaintiff against accidental injury arising out of the ownership, maintenance or use of its premises or the operations necessary or incidental thereto. Under such circumstances, the duty to defend the action was imposed on the defendant. *Connecticut Co.* v. *Mongillo*, 144 Conn. 200, 204, 128 A.2d 528; note, 50 A.L.R.2d 465 § 4.

The defendant seeks to avoid that duty by looking beyond the allegations of Shuhi's complaint and by importing facts learned from outside sources from which it assumed to conclude that the ditch had been dug in connection with the construction of the new addition and, therefore, came within the exclusionary clause of the policy. Certainly nothing concerning the new construction appeared in Shuhi's complaint. Nevertheless, the defendant argues that, even though the allegations of Shuhi's complaint appeared to bring the case within the coverage of the policy, it is excused from defending by its conclusion that the ditch was a part of the new construction, a conclusion which could only be based on an independent investigation. This is a misapplication of the rule which prevails in a few jurisdictions requiring an insurer to conduct a reasonable investigation before refusing to defend a case in which the third-party complaint, on its face, states facts which appear to bring the case outside the coverage of the policy. Comment, "The Insurer's Duty To Defend Under a Liability Insurance Policy," 114 U. Pa. L. Rev. 734, 746. The defendant's attempt to invoke the rule where, as in this case, Shuhi's complaint appears to state facts which bring the case within the policy coverage is unsound.

See *Bloom-Rosenblum-Kline Co.* v. *Union Indemnity Co.*, 121 Ohio St. 220, 167 N.E. 884. The defendant concedes, as indeed it must, that the generally accepted rule is that the duty to defend does not depend on the insurer's ultimate liability to pay. *Smedley Co.* v. *Employers Mutual Liability Ins. Co.*, supra; note, 50 A.L.R.2d 458, 475. It is equally true, however, that the duty to defend does not depend on facts disclosed by the insurer's independent investigation where the third party's complaint appears to be within the coverage. *Lee* v. *Aetna Casualty & Surety Co.*, 178 F.2d 750 (2d Cir.). As Judge Learned Hand has stated, the duty to defend means "that the insurer will defend the suit, if the injured party states a claim, which, qua claim, is for an injury 'covered' by the policy; it is the claim which determines the insurer's duty to defend; and it is irrelevant that the insurer may get information from the insured, or from any one else, which indicates, or even demonstrates, that the injury is not in fact 'covered.' The insurer has promised to relieve the insured of the burden of satisfying the tribunal where the suit is tried, that the claim as pleaded is 'groundless.' " Id., 751.

The trial court was correct in concluding that the defendant breached its duty to defend the plaintiff in the action brought by Shuhi. This breach having occurred, the question then arises: What are the consequences of that breach? The defendant insists that the plaintiff must be denied any recovery because Shuhi's injury arose under circumstances which were within the exclusion clause of the policy. See *Hill* v. *Employers' Liability Assurance Corporation, Ltd.*, 122 Conn. 193, 199, 188 A. 277. The claim is that the installation of the underground wiring was not only a part of "structural altera-

tions which involve changing the size of . . . buildings" but also "new construction . . . operations", both of which activities were, by the terms of the policy, excluded from the coverage afforded. Although the trial court concluded adversely to the defendant's claim in this regard and determined, in substance, that Shuhi's injury arose from operations necessary or incidental to the plaintiff's ownership, maintenance or use of its premises by replacing an existing wornout and hazardous facility independent of the construction of the new addition, we consider it unnecessary to reach this issue.

The plaintiff asserts that, while the defendant properly concedes the separability of its duty to defend and its duty to indemnify, it confuses its position with respect to those duties by injecting the indemnification issue into the issue of the duty to defend. We agree with this contention.

When the plaintiff requested the defendant to defend Shuhi's action, the defendant was called upon to exercise its judgment as to what was required of it under its contractual obligation to the plaintiff. It could either refuse to defend or it could defend under a reservation of its right to contest coverage under the various avenues which would subsequently be open to it for that purpose. *Commercial Contractors Corporation* v. *American Ins. Co.,* 152 Conn. 31, 202 A.2d 498; *Manthey* v. *American Automobile Ins. Co.,* 127 Conn. 516, 520, 18 A.2d 397; *Basta* v. *United States Fidelity & Guaranty Co.,* 107 Conn. 446, 450, 140 A. 816. In the present case it chose to refuse to defend. Since it breached its contract with the plaintiff by choosing that course, the question then arises as to the proper measure of the plaintiff's recovery.

The defendant having, in effect, waived the oppor-

tunity which was open to it to perform its contractual duty to defend under a reservation of its right to contest the obligation to indemnify the plaintiff, reason dictates that the defendant should reimburse the plaintiff for the full amount of the obligation reasonably incurred by it. *Arenson* v. *National Automobile & Casualty Ins. Co.*, 48 Cal. 2d 528, 539, 310 P.2d 961. The defendant, after breaking the contract by its unqualified refusal to defend, should not thereafter be permitted to seek the protection of that contract in avoidance of its indemnity provisions. Nor should the defendant be permitted, by its breach of the contract, to cast upon the plaintiff the difficult burden of proving a causal relation between the defendant's breach of the duty to defend and the results which are claimed to have flowed from it. *Gray* v. *Zurich Ins. Co.*, 65 Cal. 2d 263, 280, 419 P.2d 168. To do so would cast upon the insured not only the unpleasant but the extremely difficult burden of proof on the issue whether the defendant's attorneys, by superior skill and wisdom, could have produced a better result at less expense than that achieved by the plaintiff's counsel.

The defendant makes no claim that Shuhi's action was not ably defended or that the amount of the settlement, the expenses incurred by the plaintiff, or its attorneys' fees were unreasonable. The total amount involved in the defense and settlement is well below the $50,000 limit of liability fixed by the policy for a single injury. Under all the circumstances, the plaintiff is entitled to recover of the defendant the amount of the settlement in the Shuhi case, together with the expenses and attorneys' fees incurred by it in defending the case, with interest. *Jenkins* v. *Indemnity Ins. Co.*, 152 Conn. 249, 261,

205 A.2d 780; *Gray* v. *Zurich Ins. Co.*, supra; *Sims* v. *Illinois National Casualty Co.*, 43 Ill. App. 2d 184, 194, 193 N.E.2d 123; *Theodore* v. *Zurich General Accident & Liability Ins. Co.*, 364 P.2d 51, 55 (Alaska); 7A Appleman, Insurance Law and Practice § 4689; 7 Am. Jur. 2d, Automobile Insurance, § 167; see also note, 49 A.L.R.2d 694, 717 § 10, 721 § 12.

As indicated at the outset, the judgment appealed from included, as a further item of damage, the attorneys' fees incurred by the plaintiff in prosecuting the present action, the claim for which has now been withdrawn.

There is no error.

In this opinion the other judges concurred.