[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION FOR SUMMARY JUDGMENT OF THIRD PARTY DEFENDANT UNITED STATES FIDELITY GUARANTY COMPANY
The underlying action is a suit by the plaintiffs Michael Lanese and Domenic Lanese against the defendants Thomas Mecca, and Mecca Motor's, Inc. The amended complaint, dated October 10, 1995 sets forth eleven counts, three counts of which are directed against Thomas Mecca individually, five counts against "Mecca Motors, Inc Thomas Mecca President", and, three counts against a further defendant Albert N. Covino, alleging that Covino was a real estate agent acting as the agent of the defendants Thomas Mecca and Mecca Motors, Inc.
The underlying complaint by Lanese alleges, in the eight counts directed to Thomas Mecca and Mecca Motors, Inc. respectively, that the plaintiff on or about July 18, 1992 leased from Mecca certain premises located at 600 Meriden Road, Waterbury, Connecticut. The first count of the complaint alleges that the defendants (Mecca et al) made oral and written representations to the plaintiff that the property was free from any hazardous waste or pollution. Paragraph six alleges that the defendants made said representatives to induce the plaintiff to enter into said agreement, and intended to defraud the plaintiff. This count further alleges that the representatives were untrue. The plaintiff claims that "as a proximate result of the defendant's misrepresentations, the plaintiffs incurred substantial damages, including advertising, moving expenses, rent, renovations, cessation of business, and payments, and CT Page 14581 interest on a note.
The counts of the complaint set forth various legal theories under which remedies are sought from the alleged misrepresentations claimed to have been made by the defendants Mecca. No portion of the complaint alleges any physical injury to tangible property of the plaintiff. No portion of the complaint alleges a specific time or date of physical injury to tangible property, i.e. the "renovations". The complaint, in its narrowest possible interpretation alleges that the plaintiff was induced to lease a premises which was polluted and hence untenable, and as a consequence thereof the plaintiff lost the anticipated benefit of the lease, including costs and expenses necessary and indicated to moving into and renovating the premises, and the loss of business occasioned by moving from the untenable premises.
The defendant Mecca, here the third party plaintiff, brings suit against United States Fidelity and Guaranty Company, an insurance company, categorized by the nomenclature of pleading as the third party defendant. The claim against USFG is in three counts, referred to as counts six (breach of contract), count seven (breach of duty of good faith) and count eight (negligence).
The policy in question is captioned Master Insurance Policy. USFG has attached to its motion for summary judgment the entire policy. Mecca has attached to its brief in opposition only one part of the policy, that section captioned Commercial General Liability Form.
The policy in question, as furnished by USFG, is in two sections, each section providing its own specific coverage. The policy period is "8/08/92 to 8/08/93". The two types of coverage set forth, each with its separate premium, are "Commercial Property", premium charge $505, and "Commercial General Liability", premium charge $1,374. The named insured on the declaration sheet is "Michael Lanese and Domenic Lanese (a partnership), 600 Meriden Road, Waterbury, CT 06705.
The third party plaintiff, Mecca, is named in the endorsement captioned "additional insured-managers or lessors of premises". The endorsement states "This endorsement modifies insurance provided under the following: Commercial General Liability Coverage Part". The additional insured is named as CT Page 14582 "Mecca Motors, Inc., 600 Meriden Road, Waterbury, CT 06705". Section II of the body of the Commercial General Liability Coverage designates "executive officers and directors" and "stockholders" and employees as being general persons for insured corporations. An additional premium is charged for including Mecca Motors as an additional insured for this "Commercial General Liability Coverage Part". The premium so charged is $125.00.
The plaintiff is not listed as an "Additional Insured" under the "Commercial Property" coverage section of the policy. There are no additional insureds listed under that section of the policy and no additional premiums are charged to or for anyone other than the named insured Lanese.
The third party plaintiff Mecca's revised third party complaint combines two separate claims of failure of USFG to comply with the terms of the contract, combined in each of its three counts against the third party defendant USFG. It would have been more appropriate and more precise pleading to have set forth each of the claims in its own separate three counts, as the specific claims of failure are distinct from each other.
 I.
The first of the alleged failures claims that USFG failed to provide coverage to Mecca for loss or damage to Mecca's property, real and personal, which it claims was damages or destroyed by the tenants and/or occupants of said property. In essence, Mecca is seeking coverage under the "Commercial Property" coverage of Lanese's policy with USFG.
As aforesaid, Mecca is not an insured, either as designated additional insured or by any general extension of coverage to other named persons by any policy provision of the commercial property coverage. However, this coverage does provide, under the endorsement "Building and Personal Property Coverage Form", coverage from damage to a "Building". The term "Building" is described, in paragraph A 1.a as follows: "a. BUILDING, meaning the building or structure described in the Declarations . . . ." The premises described herein is 600 Meriden Road. The contract does not contain any limitation that the building must be owned by the insured.
The contract further provides coverage, under § 1c for CT Page 14583 "Personal Property of Others that is (1) In your care, custody or control and (2) Located in or ________________ building described in the Declarations or in the open within 100 feet of the described premises. However our payment for loss of or damage to personal property of others will only be for the account of the owner of the property."
As concerns the claims of the plaintiff Mecca as against the defendant USFG it is very clear that as afar as the loss to Mecca's personal property which was on said premises, and which was in the custody and control of the named insured Lanese, it was the intention of the parties that the policy create a direct obligation to the owner of the personal property, to the extent of making payment directly to the owner, Mecca.
 "The test to be applied to the provision contained in that agreement is whether the intent of the parties was to create a direct obligation from the plaintiff to the defendant."
Congress Daggett, Inc. v. Seamless Rubber Co., 145 Conn. 318,324 (1952).
As to the alleged damage to the real estate, the question is more complex. The terms of the policy appear to call for payment for the entire covered damage to the building. There does not appear to be any attempt, through policy language, to limit the payment to only that portion which represents only the value of the insured's leasehold interest in the building and fixtures, or to exclude coverage for the value of the lessor's freehold interest, the reversionary interest, in the building. There is a significant question of fact, under these circumstances, as to whether the parties to the contract intended to confer a direct obligation to the third party lessor Mecca, as to the damage to the building. The court notes that section E-4-d of the policy appears to favor the position of Mecca: "We may adjust losses with the owners of lost or damaged property. If other than you . . . . we will not pay the owners more than their financial interest in the covered property."
As to damage to the building, "the movant must make a showing that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact." Dougherty v. Graham, 161 Conn. 248, 250
(1971); Fogarty v. Rashaw, 193 Conn. 442, 445 (1984). CT Page 14584
The court denies the motion for summary judgment, as is based upon the third party defendant's assertion that there is no genuine issue as to whether the third party plaintiff is entitled to coverage under the "Commercial Property" coverage of the policy.
 II.
The second part of the third party plaintiff Mecca's claim against the third party defendant USFG is that it is entitled to a defense and indemnity in the underlying action. Lanese v.Mecca, CV93-116816.
As aforesaid, the third party plaintiff Mecca is a specific "additional insured" under the Commercial General Liability Coverage of the policy. The amended underlying complaint,Lanese v. Mecca, CV93-116816 alleges misrepresentations by Mecca "that the property was free of any hazardous waste or pollution and in all respects complies with the Department of Environmental Protection's rates and regulations concerning hazardous waste". The complaint further alleges "The defendant Thomas Mecca knew or should have known them (representations) to be false".
The underlying complaint, Lanese v. Mecca alleges "the plaintiffs incurred substantial damages, including advertising, moving expenses, rent, renovations, cessation of business, and payments and interest on a note".
The third party defendant USFG urges that the court interpret the complaint as alleging that the injury or damage for which Lanese seeks recovery was the result of prior "occurrences" producing conditions which existed on the property at the inception of the lease, and that the complaint is based solely upon a claim of misrepresentation that the premises were free of hazardous waste or pollution. Were that to be the case, if the act or acts of polluting necessarily equated to the term "occurrence", and if all of the "occurrences" were completed prior to the date of the policy, there would probably be no coverage, as section 1b(2) provides said liability coverage only if "The `bodily injury' or `property damage' occurs during the policy period". The date of the lease is allegedly July 18, 1992, some twenty days prior to the effective date of the policy, August 8, 1992. CT Page 14585
The underlying complaint, however, does not specify a date or time of the occurrence or occurrences which gave rise to this claim. Equally important, paragraph 9 of Section V-Definitions states "9. `Occurrence' means an accident, including continuous or repeated exposure to substantially the same general harmful conditions". Hence, even if there had been an event or events which released pollutants into the environment of this site prior to the effective date of the policy, continuous exposure to the "harmful conditions" would constitute the continuing potential for damage or injury. Hence the term "occurrence" is not limited to the original act but rather relates to the time that the damage or injury is later sustained.
Each of the counts of the complaint claims "substantial damages", including "renovations" as well as other damages, such as moving expenses, cessation of business and the like. Section V Definitions, Paragraph 12 of the policy defines "Property Damages". In addition to actual physical injury to tangible property, the term includes: "b. Loss of use of tangible property that is not physically injured . . ."
The underlying complaint does not set forth the nature of, or the time of the alleged damage to the "renovations", whether through corrosion or any similar type of direct physical damage. It does, however, lead itself to at very least a claim of "loss of use of tangible property that is not physically injured".
Consequently, if the damage to or loss of use of that tangible property took place during the term of the policy, and was caused by a direct act of pollution occurring within the policy term, or by loss within the policy period caused by "repeated exposure to substantially the same general harmful conditions" which may have been first created prior to the policy period, it appears that there would be liability coverage for that loss.
The underlying complaint does not specify the particular time when "property damage" took place. Nor does the complaint specify the precise nature of any claimed damage to property.
The court cannot interpret the underlying complaint as specifying that there was no property damage to the property of Lanese, or that any provable damage to the property of Lanese CT Page 14586 took place by virtue of an "occurrence", or "repeated exposure" which took place only prior to the inception of the policy. Conversely it is highly unlikely that if any damage to property of Lanese did take place that it would have taken place prior to the entering into the lease, or in the short interim between entering into the lease and the inception date of the policy.
The defendant's position appears to be that the underlying action solely sets forth a claim by Lanese that the premises were rendered uninhabitable by previously existing pollution, later discovered by Lanese, and that there was in fact no damage to property, but rather that any damages claimed to have been sustained were financial losses unrelated to damage to property.
This court cannot construe the underlying complaint in such a narrow fashion.
Further, "The question of whether the defendant had a duty to defend the action brought by Shuki depends on whether the complaint in that action stated facts which appeared to bring Shuki's claimed injury within the policy coverage". Missionariesof Co of Mary Inc. v. Aetna Casualty Surety Co., 155 Conn. 104,110 (1967).
"The duty to defend has a broader aspect than the duty to indemnify and does not depend upon whether the injured party will prevail against the insured." Missionaries of Co of Mary,Inc. v. Aetna, supra p. 110.
Additionally, ". . . the duty to defend does not depend on the insurer's ultimate liability to pay". Missionaries of Co ofMary, Inc. v. Aetna, supra, p. 112.
The motion for summary judgment directed to the Commercial General Liability Coverage of the third party complaint is similarly denied.
L. PAUL SULLIVAN, J. CT Page 14587