[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiffs, FJS Corporation (FJS) d/b/a Shaker Real Estate and Mary Connolly, seek an award of money damages and a declaratory judgment against the defendant, United National Insurance Company, by virtue of its refusal to defend the plaintiffs under a professional liability insurance policy issued by the defendant. The refusal to defend occurred when the plaintiffs herein were named as defendants in an underlying civil action known as Parker v. Shaker Real Estate, Superior Court, judicial district of Danbury, Docket No. 314681 (June 6, 1996, Moraghan, J.) (hereinafter, Parker). In Parker, the plaintiffs (the Parkers) alleged that they bought a parcel of land and a house from Mary Connolly, a salesperson for FJS and the listing broker for the transaction. The Parkers "sought damages stemming from their allegations that (1) during the 1930's and 1940's, the subject property was used as a gasoline station, (2) gasoline tanks had never been removed from the property, (3) hazardous materials were buried on the property and were still there when they purchased the property . . . and (4) the prior use and history of the property was not disclosed to them by any of the defendants." Id.
The complaint filed by the Parkers contains eight counts, five of which are directed against the plaintiffs in this matter. In the third and seventh counts of the complaint, the Parkers allege fraudulent nondisclosure, negligent misrepresentation and innocent misrepresentation, respectively. The fifth and eighth counts allege a violation of the Connecticut Unfair Trade Practices Act (CUTPA). The sixth count contains a claim for the CT Page 3890 loss of consortium.
The defendant maintains that the policy of insurance did not require it to defend or indemnify the plaintiffs. On December 21, 1996, the plaintiffs filed this declaratory judgment action. In response, the defendant filed an answer and special defense on March 31, 1997. Both the plaintiffs and the defendant now move for summary judgment.
Summary judgment "shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." (Citations omitted; internal quotation marks omitted.) Doty v.Mucci, 238 Conn. 800, 805, 679 A.2d 945 (1996). To prevail on a motion for summary judgment, the moving party must persuade the court that there is no genuine issue of material fact, and thus that it is entitled to judgment as a matter of law. Lees v.Middlesex Insurance Co., 219 Conn. 644, 650 (1991). "A material fact has been defined adequately and simply as a fact which will make a difference in the result of the case." (Internal quotation marks omitted.) United Oil Co. v. Urban Redevelopment Commission,158 Conn. 364, 379, 260 A.2d 596 (1969).
In the present case, the defendant moves this court for summary judgment on the ground that there is no coverage afforded to the plaintiffs under the insurance policy. In response, the plaintiffs (FJS Corp. and Mary Connolly) move this court for summary judgment on the ground that there is no genuine issue of material fact, and that it is clear as a matter of law that the defendant had a duty to defend these plaintiffs under the Professional Liability Insurance Policy for Real Estate Agents and Brokers.
In deciding whether an insurer has a duty to defend and/or indemnify its insured, a trial court must analyze the complaint filed against the insured to determine whether it states facts which appear to bring the alleged injury within the coverage of the policy. Missionaries of Co. of Mary, Inc. v. Aetna Casualty Surety Co., 155 Conn. 104, 110, 230 A.2d 21 (1967). "If any allegations of the complaint falls even possibly within the coverage, then the insurance company must defend the insured."City of West Haven v. Liberty Mutual Insurance Co., 639 F. Supp. CT Page 3891 1012, 1017 (D.Conn. 1986).
In the present case, the defendant argues that it had no duty to defend the plaintiff in the underlying action because of the "absolute pollution exclusion"[1] in the subject insurance policy which reads as follows:
 This policy does not apply to . . . any claim, action, judgment, liability, settlement, defense or expenses (including any loss, cost or expense arising out of any governmental direction or request that the Insured test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants) in any way arising out of such actual or threatened discharge, seepage, dispersal, release, or escape of pollutants, whether such results from the Insured's activities or the activities of others, and whether or not such is sudden or gradual, and whether or not such is accidental, intended, foreseeable, expected, fortuitous or inevitable and wherever such occurs.
It is the defendant's contention that the plain meaning of the exclusion's terms exclude from coverage the claims in the underlying action because every claim arises out of the "actual or threatened discharge, seepage, dispersal, release or escape of pollutants."
In response, the plaintiffs argue that a careful reading of the complaint discloses that the plaintiffs in the underlying action never alleged that there had ever been an "actual" or even a "threatened" spillage, leakage, contamination, or other source of pollution to their property. The plaintiffs further argue that the highly speculative language in the complaint, at best, alleges that "gas tanks had never been removed," and that "potentially hazardous material such as tires and various metals" remain buried on the premises.
The plaintiffs' contention that these allegations assert claims unrelated to pollution is unpersuasive. Although the allegations in the underlying complaint are vague, each cause of action is founded on the alleged presence of hazardous materials left on the subject property. Since all the claims in the complaint are vague, each cause of action is founded on the alleged presence of hazardous materials left on the subject property. Since all the claims in the underlying action arise out of the actual or threatened pollution of the subject property, there is no coverage under the insurance policy pursuant to the pollution CT Page 3892 exclusion.
The plaintiffs further argue that the exclusion is complex, ambiguous and inartfully drafted. Pursuant to Connecticut case law, "the terms of an insurance policy are to be construed according to the general rules of contract construction." HeymanAssociates No. 1 v. Insurance Co. of Pennsylvania, 231 Conn. 756,769-70, 653 A.2d 122 (1995). "If the terms of the policy are clear and unambiguous, then the language, from which the intention of the parties is to be deduced, must be accorded its natural and ordinary meaning. . . . However, [w]hen the words of an insurance contract are, without violence, susceptible of two [equally responsible] interpretations, that which will sustain the claim and cover the loss must, in preference, be adopted. . . . [T]his rule of construction favorable to the insured extends to exclusion clauses." (Citations omitted; internal quotation marks omitted.) Id., 770. Although ambiguities are to be construed against the insurer, "[a] court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity, the words do not become ambiguous simply because lawyers or laymen contend for different meanings." (Internal quotation marks omitted.) Hammer v. Lumberman's MutualCasualty Co., 214 Conn. 573, 584 (1990).
The plaintiffs contend that the clause enclosed by parentheses within the exclusion specifically limits the insurer's right to deny coverage and a defense to a claim or action which "arises out of any governmental direction or request that Insured test for, monitor cleanup, remove, contain, treat, detoxify or neutralize pollutants." The first word within the parentheses, however, is "including."[2] Therefore, the purpose of the parenthetical is to include government directed cleanups within the scope of the exclusion, not to limit the exclusion to said cleanups. The plain and unambiguous language of the exclusion excludes "any claim . . . arising out of such actual or threatened . . . release or escape of pollutants." (Emphasis added.)
As stated above, each potentially covered cause of action in the underlying complaint is founded on actual or threatened pollution to the subject property. Since the plain and unambiguous language excludes claims predicated on said pollution, the defendant had no duty to defend the plaintiffs in the underlying cause of action. CT Page 3893
Accordingly, the plaintiffs' motion for summary judgment is denied, and the defendant's motion for summary judgment is granted.
Leheny, J.