[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: PLAINTIFF'S RENEWED MOTION FOR SUMMARY JUDGMENT
Presently before the court is the plaintiff Security Insurance Company of Hartford's (Security) Renewed Motion for Summary Judgment. Previously, on May 8, 1998, this court denied Security's initial motion for summary judgment, without prejudice, with respect to its claims that the defendant ACMAT Corporation (ACMAT) contribute to the costs of defense in an underlying action. See Security Ins. Co. v. Lumbermens Mut. Cas., Superior Court, judicial district of Hartford-New Britain at New Britain, Docket No. 475565 (May 8, 1998, Graham, J.). The court denied Security's previous motion without prejudice to provide the plaintiff with an opportunity to refile its motion for summary judgment with necessary evidence and documentation. The plaintiff did so, as the present motion for summary judgment is CT Page 9287 well supported by exhibits and other documentary evidence, including a stipulation of facts by the parties.
However, the court, sua sponte, then noted the absence of any proof of compliance with Connecticut Practice Book section17-55.[1] The renewed motion was denied solely on that basis, without reaching the substantive underlying issues. The action was stayed until satisfactory proof of notice to the interested non-parties was furnished to the court. See Security Ins. Co. v.Lumbermans Mut. Cas., Superior Court, judicial district of Hartford-New Britain at New Britain, Docket No. 475565 (February 22, 1999, Graham, J.). The plaintiff subsequently provided conclusive proof that the interested non-parties had been furnished with notice of this suit at the time of its commencement.
In light of such, the stay was lifted and the plaintiff was given permission to seek reconsideration of the Renewed Motion for Summary Judgment. The Motion for Reconsideration has been made and granted. The court now reaches the substantive issues first raised in the initial Motion for Summary Judgment.
On August 26, 1996, Security filed a two count complaint against the defendants, Lumbermens Mutual Casualty Company (Lumbermens) and ACMAT. Security sought a court determination regarding Lumbermen's and ACMAT's duty to defend in the pending lawsuit against ACMAT (and other defendants), In re BridgeportAsbestos Litigation, Superior Court, judicial district of Fairfield at Bridgeport, and related actions (Bridgeport Litigation). That lawsuit was commenced by 100 plaintiffs who allegedly suffered bodily injuries as a result of, inter alia, ACMAT's use of asbestos fireproofing spray.
ACMAT is a Connecticut corporation that commenced using fire-proofing spray containing asbestos sometime in 1968. During the years that ACMAT used the asbestos fire-proofing spray, it was insured under various comprehensive liability insurance policies. Specifically, from January 1, 1968 through January 1, 1972, ACMAT was insured under an occurrence based comprehensive general liability insurance policy issued by Aetna Casualty 
Surety Company. From January 1, 1972 through January 1, 1976, ACMAT was insured under a similar general liability policy by the plaintiff Security. From January 1, 1976 through January 1, 1979, ACMAT was provided with similar insurance coverage by Liberty Mutual Insurance Company. From January 1, 1979 through April 15, CT Page 9288 1981, ACMAT was covered under a comprehensive general insurance liability policy issued by the defendant Lumbermens. Thereafter, from April 15, 1981 through April 15, 1985, ACMAT was insured by CIGNA.
All of the respective insurance policies issued to ACMAT from 1968 to 1985 were substantially the same in their coverage, since all of the policies contained standard insurance contract language regarding coverage for bodily injuries. Since April 1, 1985, ACMAT has been insured pursuant to certain claims-made comprehensive general liability insurance policies that specifically exclude coverage for asbestos-related claims.
In addition to the foregoing, however, on July 2, 1991, ACMAT and Lumbermens entered into an agreement whereby ACMAT, in exchange for certain sums and consideration, released Lumbermens from "any and all of its obligations under its insurance policies with ACMAT" for the time period between January 1, 1979 to April 15, 1981. As a consequence, when the Bridgeport Litigation commenced, Security, as one of the insurers obligated to defend ACMAT, filed this declaratory judgment action in order to determine whether Lumbermens or ACMAT was now liable to contribute to the costs of the defense in the Bridgeport Litigation. Those costs are now being shared by all of the aforementioned insurers, excepting Lumbermens.
Thereafter, on May 8, 1998, this court ruled that by virtue of the 1991 release agreement between ACMAT and Lumbermens, Lumbermens was under no duty to defend ACMAT in the Bridgeport Litigation. See Security Ins. Co. v. Lumbermens Mut. Cas., supra, Superior Court, Docket No. 475565. At that same time the court denied Security's motion for summary judgment, without prejudice.
Security again seeks a court determination regarding ACMAT's equitable obligations to contribute to the cost of defense in the Bridgeport Litigation by reason of the time period between January 1, 1979 to April 15, 1981 (First Count), and the time period after April 1, 1985 (Second Count).
 STANDARD FOR SUMMARY JUDGMENT
"Practice Book § [17-49] provides that rendition of a summary judgment is appropriate if the pleadings, affidavits and any other proof submitted show that there is no genuine issue of material fact and that the moving party is entitled to judgment CT Page 9289 as a matter of law." (Internal quotation marks omitted.) Millerv. United Technologies Corp., 233 Conn. 732, 755-52, 660 A.2d 810
(1995). "In ruling on a motion for summary judgment, the court's function is not to decide issues of material fact, but rather to determine whether any such issues exist." Nolan v. Borkowski,206 Conn. 495, 500, 538 A.2d 1031 (1988). The genuine issue aspect of summary judgment procedure requires that, prior to trial, the parties provide the court with evidentiary facts, or substantial evidence outside of the pleadings from which the material facts alleged in the pleadings can be inferred. Hammer v. Lumberman'sMutual Casualty Co., 214 Conn. 573, 578-79, 573 A.2d 699 (1990);United Oil Co. v. Urban Redevelopment Commission, 158 Conn. 364,378-79, 260 A.2d 596 (1969). "In deciding motions for summary judgment, the trial court is obliged to construe the evidence in the light most favorable to the nonmoving party. . . . The test to be applied would be whether a party would be entitled to a directed verdict on the same facts." (Citation omitted; internal quotation marks omitted.) Gabrielle v. Hospital of St. Raphael,33 Conn. App. 378, 382-83, 635 A.2d 1232, cert. denied,228 Conn. 928, 640 A.2d 115 (1994). "A trial court's decision to direct a verdict can be upheld only when the jury could not reasonably and legally have reached any other conclusion. . . ." Ciarelli v.Romeo, 46 Conn. App. 277, 282, 699 A.2d 217, cert. denied,243 Conn. 929, 701 A.2d 651 (1997); see also Mullen v. Horton,46 Conn. App. 759, 763, 700 A.2d 1377 (1997) (directed verdict rendered only where, on the evidence viewed in light most favorable to nonmovant, trier of fact could not reasonably reach any other conclusion than that embodied in the verdict as directed).
 FIRST COUNT
With respect to the first count of the complaint, Security seeks a declaration that ACMAT must assume an equitable share of the cost of defense in the Bridgeport Litigation because ACMAT released Lumbermens' coverage for the time period between January 1, 1979 to April 15, 1981. In support of its motion for summary judgment, Security argues that if it were not for the 1991 release agreement between Lumbermens and ACMAT, Lumbermens would have been required to contribute its pro rata share of ACMAT's defense in the Bridgeport Litigation. Security argues, by ACMAT's release of Lumbermens' obligations under the policy, ACMAT essentially "stepped into the shoes" of Lumbermens; as such, ACMAT must contribute to the costs of defense for the aforementioned time period. Alternatively, Security argues that CT Page 9290 since ACMAT opted to release Lumbermens from its obligations through the release agreement, ACMAT is now legally responsible to assume the share of defense costs that would have previously been Lumbermens' responsibility.
ACMAT argues in opposition to the motion for summary judgment that genuine issues of material fact exist as to whether asbestos-related bodily injuries are continuous, or progressively deteriorating injuries. Particularly, ACMAT argues because of the lack any factual information concerning the nature of the asbestos-related injuries in the Bridgeport Litigation, the court cannot determine as a matter of law whether the "continuous trigger" theory of coverage will apply in this action. Therefore, it claims a genuine issue of material fact exists as to whether coverage under the Lumbermens' policy for the time period between January 1, 1979 and April 15, 1981, has been triggered.
Alternatively, ACMAT argues that there are questions of fact as to whether Lumbermens itself ever had any obligation to defend ACMAT in the Bridgeport Litigation, much less whether ACMAT has now assumed those defense obligations by virtue of the release agreement. Specifically, ACMAT claims that Security has failed to cite any language in the Lumbermens policy that would establish a duty on the part of Lumbermens to defend ACMAT in the Bridgeport Litigation.
Finally, ACMAT argues in opposition to Security's motion for summary judgment that Security has failed to provide the court with any binding precedent in support of its proposition that an insured that settles with one of its several defending insurers is obligated to assume that settling insurer's equitable share of defense costs. Instead, ACMAT claims that the cases cited by Security in support of the foregoing proposition deal only with indemnification, and therefore are inapplicable to the present action. For all of the above reasons, ACMAT maintains that Security's motion for summary judgment with respect to the first count must be denied.
At the outset, the court addresses whether the Bridgeport Litigation model complaint alleges claims that are possibly covered under the Lumbermens policy which was in effect for the time period between January 1, 1979 to April 15, 1981. "[A]n insurer's duty to defend . . . is determined by reference to the allegations contained in the [injured party's] complaint." (Internal quotation marks omitted.) Imperial Casualty andCT Page 9291Indemnity Co. v. State, 246 Conn. 313, 323, 714 A.2d 1230 (1998). "The duty to defend an insured arises if the complaint states a cause of action which appears on the face to be within the terms of the policy coverage." (Internal quotation marks omitted.) Id. "Because the duty to defend has a broader aspect than the duty to indemnify and does not depend on whether the injured party will prevail against the insured"; Missionaries of the Co. of Mary,Inc. v. Aetna Casualty Surety Co., 155 Conn. 104, 110,230 A.2d 21 (1967); "[i]f an allegation of the complaint falls evenpossibly within the coverage, then the insurance company must defend the insured." (Emphasis added; emphasis in original; internal quotation marks omitted.) Id., 323.
The model complaint alleges that the defendants (including ACMAT), were engaged in the business of buying, selling and installing asbestos products and asbestos materials. The model complaint further alleges that the plaintiffs, while working for their employers at various job sites, came into contact with the asbestos materials and products. Specifically, the model complaint alleges that at all relevant times that the plaintiffs were working, they were "forced to come in contact with and breathe, inhale and ingest airborne fibers and particles emitted by said [asbestos] products and materials as they were sawed, cut, mixed, installed, removed or otherwise used" by the plaintiffs. The complaint alleges that as a result of this contact with the asbestos, the plaintiffs suffered permanent injuries, diseases and death. Notably absent from any of the model complaint's allegations is a specific date upon which the plaintiffs' alleged injuries occurred.
The Lumbermens general liability policy issued to ACMAT for the period between January 1, 1979 to April 15, 1981, provides the following. Under Coverage A of the liability policy, Lumbermens agreed, in return for premiums paid, to "pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of A. bodily injury . . . to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury. . . ." An "occurrence" is defined as "an accident, including continuous or repeated exposure to conditions which results in bodily injury or property damages neither expected nor intended from the standpoint of the insured." Additionally, the policy defines the term "bodily injury," as any "bodily injury, sickness or disease sustained by any person which occurs during CT Page 9292 the policy period, including death resulting any time resulting therefrom."
There is no question that the model complaint includes allegations that the plaintiffs suffered "bodily injuries" as that term is defined in the liability policy. Furthermore, in contravention of what ACMAT argues in its memorandum, ACMAT has admitted in its answer to Security's complaint that the Bridgeport Litigation complaint potentially alleges claims for bodily injuries which occurred during the period in which the Lumbermens policy was in effect. Therefore, there is no merit to ACMAT's claims that there are factual issues present regarding whether Lumbermens' duty to defend was triggered.
As indicated previously, it is well-established in Connecticut that the duty to defend is far broader than the duty to indemnify; and even the very possibility that a claim falls within the coverage of a policy obligates the insurer to defend the insured. See Imperial Casualty and Indemnity Co. v. State, supra, 246 Conn. 323; Hogle v. Hogle, 167 Conn. 572, 576,356 A.2d 172 (1975); Missionaries of the Co. of Mary, Inc. v. AetnaCasualty Surety Co., supra, 155 Conn. 110; West Haven v.Commercial Union Ins. Co., 894 F.2d 540, 544 (2nd Cir. 1990). Based upon the allegations of the model complaint and the language included in the Lumbermens policy, as well as ACMAT's admission in its answer, it is clear that the plaintiffs' claims in the model complaint, resulting from prolonged exposure to asbestos, possibly fall within the coverage provided by the Lumbermens policy. Accordingly, there is no genuine issue of material fact that Lumbermens would have been obligated to defend ACMAT in the Bridgeport Litigation.
The court must next determine whether ACMAT, having chosen to release Lumbermens from its insurance obligations to ACMAT for the period of 1979-81 in exchange for payment of $300,000, has an equitable duty to contribute to the costs of defense in the Bridgeport Litigation. This court finds that ACMAT is so obligated.[2]
An enlightening case on this topic is the Second Circuit's decision in Stonewall Ins. Co. v. Asbestos Claims Management,73 F.3d 1178 (2nd Cir. 1995). In their briefs, both parties rely on the Stonewall decision. In Stonewall, the Second Circuit held that New York law would require a "proration-to-the-insured" approach with respect to indemnification costs, for periods in CT Page 9293 which an insured opted to self-insure. Id., 1203. Specifically, the court held that under the "proration-to-the-insured" approach, an insured would be liable to contribute its pro rata share of indemnification costs for asbestos-related personal injury claims which had triggered multiple insurance coverages under the "continuous trigger" doctrine,[3] with respect to those periods of time in which the insured opted to self-insure. Id.
In reaching its decision, the Second Circuit implicitly adopted the lower court's ruling that an insured, who settles its claims against one insurer where there are other insurers who remain obligated to defend and indemnify the insured, becomes "self-insured" for that period of time in which the settling insurer's coverage was in place. Stonewall Ins. Co. v. AsbestosClaims Management, supra, 73 F.3d 1203.[4] The Second Circuit reasoned that "a fair method of allocation appears to be one that is related both to time on the risk and the degree the risk is assumed. When periods of no insurance reflect a decision by anactor to assume or retain a risk, as opposed to periods when coverage for a risk is not available, to expect the risk-bearer to share in the allocation of the risk is reasonable." (Emphasis added.) Stonewall Ins. Co. v. Asbestos Claims Management, supra, 73 F.3d 1203, quoting, Owens Illinois Inc. v. United Ins. Co.,138 N.J. 437, 479, 650 A.2d 974, 995 (1994) (insured required to contribute to indemnification costs where the insured opted to self-insure); see also Uniroyal, Inc. v. Home Insurance Co.,707 F. Sup. 1368, 1392 (E.D.N.Y. 1988) (self-insureds insure for all risks during periods of self-insurance). Thus, the Second Circuit concluded that it was equitable to require the "self-insured" entity to contribute to the cost of indemnification on a prorated basis. Stonewall Ins. Co. v. Asbestos Claims Management, supra, 73 F.3d 1203.
Here, a similar situation occurred. ACMAT had coverage, through Lumbermens, for asbestos-related injuries for the time period between January 1, 1979 to April 15, 1981. ACMAT also, however, had asbestos-related injury coverage from various other insurers for time periods both before and after the Lumbermens coverage period. Those other insurers are presently obligated to defend ACMAT in the Bridgeport Litigation. Lumbermens, by virtue of the 1991 release agreement, however, is no longer obligated to defend ACMAT. This court finds persuasive the reasoning and decision of Stonewall and concludes that ACMAT, by releasing Lumbermens in 1991, has opted to become "self-insured" for CT Page 9294 purposes of the Bridgeport Litigation for the time period between January 1, 1979 to April 15, 1981.
Furthermore, this court rejects ACMAT's claim that because the present action concerns claims for the costs of defense, and not indemnification, the decision of Stonewall is inapplicable. In fact, other courts have applied the reasoning of Stonewall andOwens Illinois Inc. United Ins. Co. with respect to the proportional allocation of defense costs to self-insureds, and have reached conclusions similar to this court. In those cases, courts have reasoned that entities which opt to self-insure for certain periods of time are self-insuring for all of the risks which may occur during the self-insured time period; including the risk of incurring defense costs. See Insurance Co. of NorthAmerica v. Forty-Eight Insulations, Inc., 633 F.2d 1212, 1224-25
(6th Cir. 1980), clarified, 657 F.2d 814, 816 (6th Cir.), cert. denied, 454 U.S. 1109, 102 S.Ct. 686, 70 L.Ed.2d 650 (1981) (reasoning underlying proration of indemnification costs for periods in which insured was self-insured equally applicable to proration of defense costs); Gulf Chemical Metallurgical Corp.v. Associated Metals Minerals Corp., 1 F.3d 365, 372, (5th Cir. 1993) (insured must bear its share of defense costs determined by fraction of time it lacked insurance coverage); Uniroyal, Inc. v.Home Insurance Co., supra, 707 F. Sup. 1392 (self-insureds insure for all risks during periods of self-insurance).
Particularly, in NL Industries v. Commercial Union Ins.,935 F. Sup. 513, 521 (D.N.J. 1996), the court considered the precise issue presently before this court; specifically, whether a self-insured is liable to contribute to the costs of defense. There, the court relied upon the reasoning articulated inStonewall in reaching its decision. In finding that self-insureds were obligated to contribute to the costs of defense for injuries that occurred within self-insured periods, the court stated that the "the proration-to-the-insured rule [for the costs of defense] . . . does not significantly undercut the broad duty to defend upon insurers," and therefore, contribution was warranted. Id., 521.
Finally, the Stonewall doctrine, applied to these facts, is consistent with the general rule in Connecticut that "all insurers providing primary coverage to an insured are duty bound to defend the insured and will be required to contribute their pro rata share of the cost of defense." Sacharko v. CenterEquities LTD. Partnership, 2 Conn. App. 439, 447, 479 A.2d 1219
CT Page 9295 (1984); see also Hanover Ins. Co. v. Fireman's Fund Ins Co.,217 Conn. 340, 353, 586 A.2d 567 (1991) (contribution is equitable in origin, and actions for contribution are appropriate when one party is obligated to pay an entire sum for which others share a "common obligation").
"[T]he aim of equitable contribution is to apportion a loss between two or more insurers who cover the same risk, so that each pays its fair share and one does not profit at the expense of the others." Fireman's Fund Insurance Co. v. Maryland CasualtyCo., 77 Cal.Rptr.2d 296, 306 (1998). To allow ACMAT to release one insurer from its obligation to defend upon receipt of $300,000 and then decline to replace that insurer in sharing the equitable costs of defense would be patently inequitable.
Accordingly, the court holds that ACMAT is legally obligated to join the participating insurers and assume an equitable share of the costs of defending the Bridgeport Litigation as a result of having released Lumbermens from the latter's obligation to defend.
 SECOND COUNT
In its second count, Security seeks a declaration that ACMAT must equitably contribute to the costs of defense in the Bridgeport Litigation because it was uninsured for the time period after April 15, 1985. Security again argues that since ACMAT was without asbestos coverage for the time period following April 15, 1985, ACMAT was self-insured for that time, and therefore, it must contribute to the costs of defense.
ACMAT argues that it should not be liable to contribute to the costs of defense for the time period after April 15, 1985, because asbestos-related injury coverage was specifically excluded from the general liability insurance policies issued to it after that date.[5]
In Stonewall Ins. Co. v. Asbestos Claims Management, supra, the Second Circuit stated: "[W]e do not agree with the district Judge's subsidiary ruling that proration-to-the-insured should be applied to the years after 1985 when asbestos liability insurance was no longer available. Judge Martin applied proration to the insured even after 1985. His rationale was that [the insured] had `bargained away coverage by accepting asbestos exclusion clauses.' We think that is not a realistic view of the situation. CT Page 9296 There is no reason to believe that any bargaining occurred with respect to the asbestos exclusion clauses." Id., 1203. Thus, the Second Circuit reasoned that because the insured did not choose to be self-insured for asbestos-related injuries, it should not be required to contribute to indemnification costs for claims occurring outside of the period of time when asbestos coverage was available.
Specifically, the court stated: "[W]e note that judges who have endorsed proration to the insured have done so only to oblige a manufacturer to accept a proportionate share of the risk that it elected to assume, either by declining to purchase available insurance or by purchasing what turned out to be an insufficient amount. Thus, [the decision] in Owens Illinois
explicitly contrasts its proration approach to `periods when coverage for a risk is not available,'. . . . Similarly, [inKeene v. Insurance Company of North America, 667 F.2d 1034, 1058
(D.C. Cir. 1981), the court] endorsed proration to the insured only "prior to the time when such coverage could no longer be obtained." Id., 1204.
The parties have stipulated that after 1985, ACMAT had general liability insurance coverage, but that coverage for asbestos-related injuries was specifically excluded from its insurance policies. Plaintiff has not offered any evidence that such coverage was even available to ACMAT after 1985.
This court again finds the reasoning of the Stonewall Ins.Co. v. Asbestos Claims Management persuasive. The "proration-to-the-insured" approach, which requires contribution from a self-insured entity for those periods in time in which insurance coverage is available, is inapplicable to those periods of time in which coverage for a particular risk cannot be acquired. The element of choice, and in turn, the conscious decision of an insured to assume the risks of being "self-insured" is lost if the insured cannot realistically acquire the particular coverage desired.
It is inequitable to require an insured to assume defense costs for claims which it could not have insured against, when multiple insurers are already obligated to provide the insured with a defense in an action. It is well established in Connecticut that "[t]he fact that the complaint alleges a claim that is excluded by the policy does not excuse [the] insurer from defending [the] insured where other counts of the claim fall CT Page 9297 within the provisions of the policy." Imperial Casualty Indemnity Co. v. State, supra, 246 Conn. 332; 7CJ. Appleman, Insurance Law and Practice (1979) § 4684, pp. 78-79.
Accordingly, Security's motion for summary judgment with respect to the second count of the complaint is denied.
James T. Graham Superior Court Judge